

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ORIGINAL

| | |
|---|---|
| PRISON LEGAL NEWS, a non-profit Washington corporation § § §<br><br>Plaintiff §<br>v. §<br> §<br>GARY LINDSEY, individually and §<br>in his official capacity as the Chief Deputy, §<br>Office of Detentions for Dallas County, §<br>SHERIFF LUPE VALDEZ, individually §<br>and in her official capacity as the Sheriff of §<br>Dallas County, and DALLAS COUNTY §<br> §<br>Defendants. § | CIVIL ACTION NO.<br>3-07CV0367-P |

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff Prison Legal News respectfully files this Motion for a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65, and requests this Court enter a preliminary injunction to enjoin Defendants from enforcing their unconstitutional publications policy in the Dallas County Jail.

The injunction seeks to prohibit Defendants from interfering with Prison Legal News' fundamental constitutional rights to free speech and due process of law, guaranteed by the First and Fourteenth Amendments to the United States Constitution.

In support, Plaintiff will show:

### FACTS

Prison Legal News publishes a monthly 48-page legal information magazine ("the publication") dealing with the rights of incarcerated individuals. The publication provides information about, e.g., court access, disciplinary hearings, prison conditions, excessive force, mail censorship, jail litigation, visitation, telephones, religious freedom, prison rape, and the death penalty. It has been published continuously since 1990. The publication is core protected

speech, which is not objectionable on security or other grounds. Prison Legal News has approximately 5,600 subscribers nationwide, and nine subscribers who are currently incarcerated in the Dallas County Jail. *See* Exhibit 1, Affidavit of Paul Wright, Editor of Prison Legal News, para. 1-2, Appendix p. 1. Copies of two recent issues of the publication are attached as Exhibit 2, Appendix p. 3-98.

On March 31, 2006, Defendant Lindsey verbally issued a policy prohibiting inmates in the jail from possessing magazines or newspapers. The policy prevents Prison Legal News from delivering its publication to its subscribers incarcerated in the jail through the mail.

On February 6, 2007, Defendant Lindsey issued a written policy codifying his March 31 verbal policy. The new policy provides: "General population inmates are not allowed magazines or newspapers." Inmates may "receive through the mail ... soft back books or publications (not magazines) from publishers, publication supplier, or bookstores." Exhibit 3, Dallas County Sheriff's Department Newspapers, Magazines and Inmate Mail Policy, p. 1-2, Appendix p. 99-100.

The jail's "Inmate Handbook," which was last updated in May 2005, still provides inmates may receive "books, magazines, or newspapers," if they are sent through the mail by the publisher. Prison Legal News and inmates at the jail received no notice of the policy change. Exhibit 4, Dallas Sheriff's Department Inmate Handbook, p. 8, Appendix p. 106.

The new policy states the purpose for the change is to "eliminate clutter" in the jail. Exhibit 3, Newspapers, Magazines and Inmate Mail Policy, p. 1, Appendix p. 99.

Since creation of the new policy, Prison Legal News has been unable to have its publication received by inmates in the jail. The new policy prevents Prison Legal News from communicating with its subscribers in the jail. *See* Exhibit 1, Affidavit of Wright, para. 6, Appendix p. 2.

Since the enactment of the new policy, issues of the publication have been destroyed upon receipt at the jail.

Prison Legal News did not receive any notice of the new policy from the jail that its publication was being summarily censored and destroyed. It did not receive any opportunity to contest the decisions preventing inmates at the jail from receiving its publication. *See* Exhibit 1, Affidavit of Wright, para. 4-5, Appendix p. 1-2.

On July 20, 2006, one of Prison Legal News' subscribers, inmate Billy Allen, filed a grievance with the jail because he was not receiving the publication. He received a response on September 7, 2006, which read "newspapers and magazines are no longer allowed in the jail." Exhibit 5, Billy Allen July 20, 2006 Grievance, Appendix p.111-112. Mr. Allen's copy of the publication was destroyed before he was provided notice of the new policy. No notice was provided to Prison Legal News.

The new policy, developed, enacted and enforced by Defendants, deprives Prison Legal News of its constitutional rights of free speech and expression and its due process rights.

Defendants' new policy provides Prison Legal News with no alternative means of exercising its free speech and expression rights by receipt, possession and enjoyment of otherwise legal reading materials such as magazines and newspapers. *See* Exhibit 1, Affidavit of Wright, para. 8, Appendix p.2.

Accommodation of the free speech and expression and due process rights of Prison Legal News with respect to materials protected by the First and Fourteenth Amendments will not have significant impact at the Dallas County Jail.

Readily available alternatives exist to Defendants' current policy which, at a *de minimis* cost, could easily meet any legitimate or significant interests of Defendants and the jail without sacrificing the free speech and expression rights of Prison Legal News and the inmates.

3

## ARGUMENT

A federal court should grant a preliminary injunction when the movant has clearly carried the burden of persuasion on all four of the following prerequisites: (1) a substantial threat that Plaintiff will suffer irreparable injury if the injunction is not granted, (2) a substantial likelihood that Plaintiff will prevail on the merits, (3) the threatened injury to Plaintiff outweighs the threatened harm to the Defendants and (4) granting the preliminary injunction will not disserve the public interest. *See Mississippi Women's Medical Clinic v. McMillan*, 866 F.2d 788, 790 (5th Cir. 1989). Plaintiff satisfies each element necessary for a preliminary injunction.

*1.   Plaintiff Will Suffer Irreparable Injury if the Court Does Not Enjoin Defendants from Enforcing Their Unconstitutional Policy*

Plaintiff will suffer immediate and irreparable injury, for which it has no adequate remedy at law, if this Court does not immediately prevent Defendants from enforcing their unconstitutional policy. The requested injunction is necessary to protect Plaintiff's constitutional right of free speech and assembly. *See Mississippi Women's Medical Clinic* 866 F.2d at 790.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Deerfield Medical Center v. Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1980), *citing Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality). Plaintiff lost its First Amendment rights when Defendants began enforcing their unconstitutional policy. By enforcing the unconstitutional new policy Prison Legal News is unable to communicate with its subscribers in the jail. "Prison Legal News' subscribers are still unable to receive their copies of the magazine. Prison Legal News has continued to send copies of the magazine to our subscribers in the jail, despite learning about the publication ban." Exhibit 1, Affidavit of Wright, para. 6, Appendix p. 2.

The preliminary injunction is necessary to prevent further violations of Prison Legal News' free speech rights. The policy at the jail prevents Prison Legal News from engaging in

4

constitutionally protected activity, without a compelling penological justification. Every day this preliminary injunction is not granted, Prison Legal News suffers further irreparable injuries.

2.      *There is Substantial Certainty Plaintiff Will Prevail on the Merits*

The Fifth Circuit has already decided jail publication bans are unconstitutional. In *Mann v. Smith*, 796 F.2d 79 (5th Cir. 1986), an inmate challenged the Midland County Jail's ban on publications. The Midland County Jail contended the publication ban was necessary to prevent fires and damage to the plumbing. The Fifth Circuit concluded "the ban on newspapers and magazines must be struck down" because it represented "an 'exaggerated response' by jail officials to the legitimate need to 'preserve internal order and discipline and to maintain institutional security.' The patently underinclusive nature of the regulation strongly suggests that it is indeed an exaggerated response." *Id.* at 82, citing *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979). Dallas County's ban on publications appears factually identical to the ban at issue in *Mann* which was found unconstitutional. Numerous other courts have also struck down jail and prison publication bans for violating the First Amendment. *See, e.g., Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Prison Legal News v. Lehman*, 397 F.3d 692 (9th Cir. 2005) (finding state prison system's policy of banning publications to reduce "clutter" unconstitutional); *Jacklovich v. Simmons*, 392 F.3d 420 (10th Cir. 2004) ("both inmates and correspondents have a qualified liberty interest in uncensored communications that are protected by the First Amendment"); *Prison Legal News v. Cook*, 238 F.3d 1145 (9th Cir. 2001) ("publishers who wish to communicate with inmates by sending requested subscriptions have a legitimate First Amendment interest in access to prisoners") (citing *Thornburgh*, 490 U.S. at 408); and, *Miniken v. Buss*, 978 F.Supp. 1356 (E. Dist. Wash. 1997) ("the blanket prohibition against receipt of a publication by any prisoner carries a heavy presumption of unconstitutionality").

Publishers, such as Prison Legal News, have a well established right to due process when their publication is rejected by jail authorities. At minimum, they are entitled to notification the publication will not be delivered and an opportunity to respond. *See, e.g., Procunier v. Martinez*, 416 U.S. 396 (1974) (overruled on other grounds); *Prison Legal News v. Lehman*, 397 F.3d at 701 ("prison officials must provide minimum procedural safeguards to protect inmates' interest in receiving mail by notifying inmates of their decision not to deliver letters"); *Miniken*, 978 F. Supp. at 1363 ("any restriction on prisoner mail must be accompanied by procedural protections"); *Jacklovich*, 392 F.3d at 433 ("procedural safeguards must accompany any decision to withhold delivery or censor incoming prison mail").

3. *The Injury to Prison Legal News Outweighs Any Harm to Dallas County*

The continuing harm to Prison Legal News is greater than any harm a preliminary injunction would cause to the individual Defendants or Dallas County.

Defendants' interest in censoring Prison Legal News's publication without due process is not a legitimate penological justification. Any harm Dallas County will suffer is *de minimis*, while Prison Legal News is suffering continuing violations of a fundamental right.

4. *Issuing a Preliminary Injunction Will Not Disserve the Public Interest*

An issuance of a preliminary injunction would not adversely affect the public interest and public policy. "It is always in the public interest to protect First Amendment liberties." *Joelner v. Village of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)). Plaintiff's First Amendment and due process rights are well established—upholding fundamental rights is always in the public interest. Accordingly, the public interest would be protected, rather than adversely affected, by the granting of a preliminary injunction.

THEREFORE, Plaintiff Prison Legal News requests the Court set its application for a preliminary injunction for a hearing, and, after the hearing, issue a preliminary injunction against Defendants, prohibiting them from continuing to enforce the publication ban at the Dallas County Jail during the pendency of this case. Plaintiff requests a minimal bond of $100.00 for issuance of the preliminary injunction because a fundamental right is at issue and clear favorable precedent exists.

Dated: February 23, 2007.

Respectfully Submitted,

_____
Scott Medlock
State Bar No. 24044783
James C. Harrington
State Bar No. 09048500
Wayne Krause
State Bar No. 24032644

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Dr.
Austin, TX 78741
   (512) 474-5073 [phone]
   (512) 474-0726 [fax]

ATTORNEYS FOR PLAINTIFFS