IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PRISON LEGAL NEWS, a non-profit Washington corporation, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 3:07-CV-0367-P |
| v | § § | |
| GARY LINDSEY, individually and in his official capacity as the Chief Deputy, Office of Detentions for Dallas County, SHERIFF LUPE VALDEZ, individually and in her official capacity as the Sheriff of Dallas County, and DALLAS COUNTY, | § § § § § § § § | |
| Defendants. | § | |

# **ORDER**

Now before the Court is the motion of Plaintiff Prison Legal News for a preliminary injunction, filed February 27, 2007 ("Mot."). Defendants filed a response to this motion on April 18, 2007 ("Resp."), and Plaintiff filed a reply to the Defendants' response on April 27, 2007 ("Reply"). Pursuant to an order of the Court, Defendants filed a supplemental appendix ("App. Resp.") on May 29, 2007. After review of the parties' pleadings and the applicable law, the Court hereby DENIES Plaintiff's motion in its entirety.

    **I.**    **Background**

Plaintiff has published a monthly magazine, *Prison Legal News* (*PLN*), since 1990. The magazine contains information of interest to prison inmates concerning access to courts, prison conditions, mail censorship, jail litigation, prisoners' rights, and related subjects. The

publication has approximately 5,600 subscribers nationwide, including nine who are currently in the Dallas County Jail. (Paul Wright Aff. ¶¶ 2-3, Mot. Ex. 1.)

Prior to March 2006, Dallas County Jail subscribers to *PLN* received their magazines regularly. In March 2006, Defendant Lindsey orally announced a new policy whereby inmates in the general population could no longer receive newspapers or magazines. (Mot. at 2.) This policy, reduced to writing in February 2007, stated that "General Population inmates are not allowed magazines or newspapers."[1] (Mot. Ex. 3 at 100.) The justifications given were that "[l]ocal, national, and international news are available from the television located in each tank's dayroom" and that "[r]estricting possession of newspapers and magazines will help eliminate clutter in the tanks." *Id.* Pursuant to the March 2006 policy, copies of *PLN* were destroyed when they arrived at the jail, and Plaintiff received no notice that the magazines were no longer reaching their subscribers. (Paul Wright Aff. ¶ 4, Mot. Ex. 1.)

Plaintiff filed this motion on February 27, 2007, claiming that Defendants' censorship of *PLN* violated the publisher's First Amendment right of access to prisoner-subscribers; Plaintiff further claims that its rights under the Fourteenth Amendment's due process clause were violated when Defendant failed to notify Plaintiff of the censorship and give the publisher an opportunity to be heard. (Mot. at 1-3.) Plaintiff's motion seeks a preliminary injunction to (1) prevent further restrictions on Plaintiff's right to communicate with inmates in the Dallas County Jail through *PLN* or other means; and (2) prevent Dallas County from censoring or destroying copies

---

[1] For convenience, this Order refers to this version of the policy as the March 2006 policy.

of *PLN* without giving Plaintiff notice and the opportunity to object to the censorship or destruction. (*Id.* at 6-7.)

On March 14, 2007, Defendants put a new policy into effect at the Dallas County Jail. (App. Resp. at 3.) The new policy allows prisoners to receive *PLN* and other publications through the mail; it does not, however, contain any remedy for the claimed due process violation. (*Id.* at 5-6.) On April 18, 2007, Defendants filed their Response, stating that the policy complained of is no longer in force and that prisoners are once again being allowed to receive *PLN*, so that the requested injunction was unnecessary. (Resp. at 2, 4.) Plaintiff's Reply, filed April 27, 2007, expressed dissatisfaction with the revised policy and renewed its request for a preliminary injunction. (Reply at 2-4.)

**II.     Legal Standard**

In order to obtain a preliminary injunction, the moving party must demonstrate to the court that (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs the threatened injury to the defendant; and (4) granting the preliminary injunction will serve the public interest. *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994). Because "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule," the movant's failure to prove one of these elements will defeat a motion for preliminary injunction. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985); *Medlin v. Palmer*, 874 F.2d 1085, 1091 (5th Cir. 1989).

### III. Analysis

As discussed below, this Court does not find that Plaintiff has made an adequate showing either that it will be irreparably injured if an injunction is not granted or that the public interest will be served by an injunction in this case. This analysis is thus limited to these two elements.

### A. Does Plaintiff Face Threat of Irreparable Injury?

In determining whether Plaintiff faces the threat of irreparable injury if an injunction is not granted, the Court will analyze two issues: first, whether the threat of injury exists; and second, whether the threatened injury is irreparable absent an injunction.

#### 1. Does Defendants' March 2006 publications policy threaten injury to Plaintiff?

The Supreme Court has recognized that prisoners have a First Amendment right of access to reading materials not inconsistent with prison safety or other legitimate penal concerns. *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989). In addition, the court has also stated that "publishers who wish to communicate with those who . . . willingly seek their point of view have a legitimate First Amendment interest in access to prisoners." *Id.* The policy complained of in Plaintiff's motion violates the publisher's legitimate First Amendment interest.

In *Turner v. Safley*, 482 U.S. 78 (1987), the court held that a prisoner's constitutional rights could be restricted only if the restriction served a legitimate penological interest. *Id.* at 90. Reducing clutter in prisons is generally not recognized as a legitimate interest, and several courts have held that the arbitrary, blanket exclusion of newspapers and magazines from a prison violates the First Amendment. *See Pembroke v. Wood County*, 981 F.2d 225 (5th Cir. 1993); *Mann v. Smith*; 769 F.2d 79, 82-83 (5th Cir. 1986); *Parnell v. Waldrep*, 511 F. Supp. 764 (W.D.N.C. 1981) (all holding that blanket prohibitions of newspapers and magazines was not

rationally related to legitimate state interest). Thus, the Defendants' March 2006 policy threatens injury to Plaintiff's First Amendment rights, and that injury is not justified by any legitimate penological interest.

Similarly, the right of a publisher to procedural due process in the event that its publication is disallowed by prison authorities appears equally clear. *Procunier v. Martinez*, 416 U.S. 396 (1980), states that both the sender and the intended recipient of a letter addressed to a prisoner have the right to be notified of its rejection by prison authorities and given the opportunity to appeal. *Id.* at 417-19 (*overruled in part by Thornburgh*, 490 U.S. 401). In *Prison Legal News v. Cook*, 238 F.3d 1145 (9th Cir. 2001), the Ninth Circuit extended this rule to all mail protected by the First Amendment, including subscription mail. *Id.* at 1147-48, 1152-53.

Federal regulations provide that in federal prisons, "the warden shall provide the publisher or sender of an unacceptable publication a copy of the rejection letter" and advise the sender that he can appeal the rejection. Incoming Publications, 28 C.F.R. § 540.71(e) (2007). This regulation, although not binding on the states, was approved by the Supreme Court in *Thornburgh*, and variations of the regulation have been adopted in several jurisdictions. *Thornburgh*, 490 U.S. at 406. In *Montcalm Publ'g Co. v. Beck*, 80 F.3d 105 (4th Cir. 1996), the Fourth Circuit recognized the right of a publisher to be notified if its publication was disapproved and given the opportunity to object. *Id.* at 106, 109. The Tenth Circuit recognized the same rights in *Jacklovich v. Simmons*, 392 F.3d 420 (10th Cir. 2004), stating that the publisher has the right to be notified of the rejection of its publication, and that notification of the inmate-recipient is not sufficient to satisfy this requirement. *Id.* at 432-34.

Thus it appears that Defendants' failure to notify either inmates or Plaintiff that copies of *PLN* were being destroyed was a violation of Plaintiff's due process rights. This violation, coupled with the violation of Plaintiff's First Amendment rights discussed above, leads this Court to conclude that Defendants' March 2006 publications policy threatens injury to Plaintiff.

2.  <u>Is the injury irreparable in the absence of an injunction?</u>

Defendants assert that a preliminary injunction is unnecessary in this case because they have already changed the March 2006 policy "to conform to constitutional standards." (Resp. at 2, 4.) It is well settled in the Fifth Circuit that a defendant's "mere voluntary cessation" of a challenged practice does not preclude a finding of irreparable injury. *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 166 (5th Cir. 1993). In this case, Plaintiff has challenged the sincerity of Defendants' stated intention to bring the jail's policies into compliance with the First Amendment, and notes that Defendants' new policy does not address Plaintiff's due process rights of notice and the right to be heard. (Reply at 2-4.)

The Court finds Plaintiff's assertions that the new policy continues Defendants' "general rule . . . of exclusion and censorship" inaccurate. (Reply at 3.) In particular, Plaintiff states that the new policy applies only to magazines and that the threat to *PLN* remains. (*Id.*) The actual policy, however, states that inmates "may receive" newspapers, soft-back books or "publications" through the mail from publishers, publication suppliers, or bookstores. (App. Resp. at 5-6.) Defendant states that under this policy, *PLN* will be delivered to the inmate to whom it is addressed, "whether [*PLN*] is regarded as a 'newspaper' or a 'publication'." (Sweet Aff., App. Resp. at 4.) This essentially reverses the March 2006 policy, which specifically

prohibited inmates from receiving newspapers and magazines. (Mot. Ex. 3 at 100.) The Court finds that under Defendants' new publications policy, Plaintiff's First Amendment rights are not threatened with continuing irreparable injury.[2]

The threat of irreparable harm to Plaintiff's Fourteenth Amendment rights is a closer question. Not only have Defendants not proposed a remedy for its violation of Plaintiff's rights of notice and the opportunity to be heard when its publication was prevented from reaching jail inmates; Defendants have not acknowledged any problem in this area. The Court believes that Defendants' new "Newspapers, Magazines, and Inmate Mail Policy" should include provisions for notifying both the inmate-recipient and the sender in the event of future attempts to restrict its access to inmates. In the absence of a continuing threat to Plaintiff's First Amendment rights, however, the Court finds that, at present, there is no continuing threat to Plaintiff's right to be notified if its First Amendment rights are violated.

    **B.**    **Will an injunction serve the public interest?**

The Court also is not persuaded that granting an injunction in this case would serve the public interest. As discussed above, Defendants have abandoned the presumption of censorship that informed the March 2006 policy, and they assert that they "will not change their policy from one that is constitutional to one that is not." (Resp. at 4.) A defendant's statement that it does not intend to revive a discontinued policy is "one of the factors to be considered in determining

---

[2] The Court notes that it is relying on the Affidavit of Leslie Sweet (App. Resp. at 3-4), filed with the new policy, for its interpretation of the new "Newspapers, Magazines, and Inmate Mail Policy." The policy itself is less than clear and would benefit from editing to bring the language of the entire policy in line with the intent expressed in the affidavit.

the appropriateness of granting an injunction against the now-discontinued acts." *United States v. W.T. Grant*, 345 U.S. 629 (1953).

The Fifth Circuit has been reluctant to grant injunctions in cases where the defendant has made a good-faith effort to change its policies, even when those changes were prompted by the threat of litigation. In *Pembroke*, the substandard conditions at the Wood County Jail had been corrected by the time the prisoners' lawsuit went to trial. 981 F.2d at 227. Even though many of the corrections had come about because of the prisoners' suit, the court stated that because the problem was remedied before trial, the prisoners were not entitled to judicial relief absent a showing that the conditions complained of were likely to recur. *Id.* at 228. Similarly, in *Morrow v. Harwell*, 768 F.2d 619 (5th Cir. 1985), the court stated that "[w]here . . . the defendant makes dutiful progress to remedy the asserted problems, whether or not it is encouraged to do so by a suit, a federal court should exercise restraint." *Id.* at 628. The court in *Harwell* held that federal injunctions directed at local officials were appropriate "only when constitutional violations have been shown *and* when the . . . officials are demonstrably unlikely to implement the required changes" without the impetus of a federal injunction. *Id.* at 627 (emphasis in original). The court in *Harwell* was particularly concerned that federal injunctions enjoining state actions would violate the principle of federalism, upsetting the delicate balance between federal courts and state governments. *Id.*

Plaintiff argues that Defendants could easily return to their unconstitutional practices in the future. (Reply at 3.) This allegation, unsupported by evidence, is not a sufficient showing that a discontinued practice is likely to recur. *Pembroke*, 981 F.2d at 228. This Court finds

Plaintiff's recitation of Defendants' past transgressions unconvincing, especially as it contains a misleading description of the policy now in force at the Dallas County Jail. (Reply at 2-3.) Hence, the Court does not believe that an injunction at this time would serve the public interest.

### IV.   Conclusion

The Court finds no threat of irreparable injury if an injunction is not granted, and also that an injunction at this time would not serve the public interest. Plaintiff has thus failed to meet its burden on two of the elements required for the grant of a preliminary injunction. Therefore, Plaintiff's motion is DENIED in its entirety.

**IT IS SO ORDERED.**

Signed this 18th day of June 2007.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE