UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PRISON LEGAL NEWS, a non-profit Washington corporation | § § § | |
| Plaintiff | § | CIVIL ACTION NO. |
| v. | § § | 3:07–CV-0367-P |
| GARY LINDSEY, individually and in his official capacity as the Chief Deputy, Office of Detentions for Dallas County, SHERIFF LUPE VALDEZ, individually and in her official capacity as the Sheriff of Dallas County, EDGAR MCMILLAN, individually, and DALLAS COUNTY | § § § § § § § § § | |
| Defendants. | § | |

**PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Prison Legal News respectfully files this Original Complaint and will show:

STATEMENT OF CLAIM

1. Plaintiff Prison Legal News brings this civil rights action for redress of violations of its rights to free speech and due process under the law, seeking injunctive and declaratory relief, as well as compensatory and punitive damages against Defendants, as appropriate.

2. Plaintiff complains Defendants have violated and continue to violate its constitutional rights under color of law and in violation of the First and Fourteenth Amendments to the United States Constitution.

JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988. Jurisdiction is based on 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and the aforementioned federal statutory and constitutional provisions.

4. Venue is proper in this Court under 28 U.S.C. § 1391 because the events complained of occurred within this district.

PARTIES

5. Plaintiff Prison Legal News is a Washington non-profit IRS section 501(c)(3) corporation. It has offices in Seattle, Washington and Battleboro, Vermont.

6. Gary Lindsey is Chief Deputy of the Office of Detentions for Dallas County. He issues policies for the Dallas County Jail ("the jail") and oversees all operations at the jail. He is sued in his individual capacity for punitive, declaratory and compensatory damages, and injunctive relief. He is sued in his official capacity for declaratory, injunctive and compensatory relief.

7. Edgar McMillan was Chief Deputy of the office of Detentions for Dallas County, and was Defendant Lindsey's predecessor. He wrote policies for the jail during a relevant time period. He is sued in his individual capacity for punitive, declaratory and compensatory damages.

8. Lupe Valdez is the Sheriff of Dallas County and is, in her official capacity, by law responsible for the operation of the jail as its chief administrative officer. She is the chief policy maker for the jail. She is sued in her individual capacity for punitive, declaratory and compensatory damages, and injunctive relief. She is sued in her official capacity for declaratory, injunctive and compensatory relief.

9. Dallas County is a political subdivision of the State of Texas. Dallas County is sued for injunctive, declaratory and compensatory relief.

STATEMENT OF FACTS

10. Prison Legal News publishes a monthly 48-page legal information magazine ("the publication") dealing with the rights of incarcerated individuals. The publication provides information about, e.g., court access, disciplinary hearings, prison conditions, excessive force, mail censorship, jail litigation, visitation, telephones, religious freedom, prison rape, and the

death penalty. It has been published continuously since 1990. The publication is core protected speech, which is not objectionable on security or other grounds. Prison Legal News has approximately 5,600 subscribers nationwide, and nine subscribers who are currently incarcerated in the Dallas County Jail.

11. On or about March 17, 2006, Defendant McMillan drafted a policy prohibiting inmates in the jail from possessing magazines or newspapers. The new policy provides: "General population inmates are not allowed magazines or newspapers." Inmates may "receive through the mail … soft back books or publications (not magazines) from publishers, publication supplier, or bookstores." The policy prevents Prison Legal News from delivering its publication to its subscribers incarcerated in the jail through the mail.

12. On or about March 17, 2006, Defendant McMillan sent an e-mail to jail staff, including Defendant Lindsey, advising staff to enforce the new policy. In July 2006, Defendant McMillan left his position as chief deputy at the jail, and was replaced by Defendant Lindsey. Since that time, Defendant Lindsey has been responsible for enforcing the policies at the jail, including the publication ban.

13. The jail's "Inmate Handbook," which was last updated in May 2005, still provides inmates may receive "books, magazines, or newspapers," if they are sent through the mail by the publisher. Prison Legal News and inmates at the jail received no notice of the policy change.

14. The new policy states the purpose for the change is to "eliminate clutter" in the jail.

15. Since creation of the new policy, Prison Legal News has been unable to have its publication received by inmates in the jail. The new policy prevents Prison Legal News from communicating with its subscribers in the jail.

16. Since the enactment of the new policy, issues of the publication have been destroyed upon receipt at the jail.

17. Prison Legal News did not receive any notice of the new policy from the jail that the publication was being summarily censored and destroyed. It did not receive any opportunity to contest the decisions preventing inmates at the jail from receiving its publication.

18. Prison Legal News has never received any notice from Dallas County that the publication was being censored and destroyed.

19. On July 20, 2006, one of Prison Legal News' subscribers, inmate Billy Allen, filed a grievance with the jail because he was not receiving the publication. He received a response on September 7, 2006, which read "newspapers and magazines are no longer allowed in the jail." Mr. Allen's copy of the publication was destroyed before he was provided notice of the new policy. No notice was provided to Prison Legal News.

20. The new policy, developed, enacted and enforced by Defendants, deprives Prison Legal News of its constitutional rights of free speech and expression and its due process rights.

21. Defendants' new policy provides Prison Legal News with no alternative means of exercising its free speech and expression rights by receipt, possession and enjoyment of otherwise legal reading materials such as magazines and newspapers.

22. Accommodation of the free speech and expression and due process rights of Prison Legal News with respect to materials protected by the First and Fourteenth Amendments to the United States Constitution will not have significant impact at the Dallas County Jail.

23. Readily available alternatives exist to Defendants' current policy which, at a *de minimis* cost, could easily meet any legitimate or significant interests of Defendants and the jail without sacrificing the free speech and expression rights of Prison Legal News and the inmates.

## CAUSE OF ACTION I: FREEDOM OF SPEECH AND EXPRESSION

24. Defendants' policy banning newspapers and magazines violates the free speech and expression rights of Prison Legal News secured by the First and Fourteenth Amendments to the Untied States Constitution.

25. Prison Legal News has a constitutionally-protected liberty interest in communicating with incarcerated individuals. This right is clearly established under existing case law.

26. Defendants' policy does not further any legitimate penological interest.

## CAUSE OF ACTION II: DUE PROCESS OF LAW

27. Defendants' policy banning newspapers and magazines does not provide Prison Legal News with individualized notice that its free speech and expression rights are being violated. No notice of the new policy was provided to Prison Legal News before the policy prevented the publication from reaching the inmates in the jail.

28. Prison Legal News has a right under the Fourteenth Amendment to receive notice and the opportunity to object when Defendants prevent its publication from reaching its subscribers. This right is clearly established under existing case law.

29. Defendants' failure to provide notice to Prison Legal News that its publication was being censored does not further any legitimate penological interest.

## DECLARATORY RELIEF

30. Plaintiff requests all appropriate declaratory relief to which they are entitled.

## INJUNCTIVE RELIEF

31. Plaintiff requests the Court grant appropriate relief enjoining Defendants from continuing to violate its free speech and due process rights.

## ATTORNEYS' FEES AND COSTS

32. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover attorneys' fees and costs.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff requests the Court:

A. Award punitive damages against all individual Defendants, in their individual capacities, as appropriate and allowed by law;

B. Award compensatory damages against all Defendants, jointly and severally;

C. Grant declaratory and injunctive relief under federal law, as set out in this Complaint;

D. Grant reasonable attorneys' fees, litigation expenses and court costs; and,

E. Grant all such other and further relief as appears reasonable and just, to which Plaintiff may be entitled.

Dated: August 13, 2007.

Respectfully Submitted,

 /s/ Scott Medlock
Scott Medlock
State Bar No. 24044783
James C. Harrington
State Bar No. 09048500
Wayne Krause
State Bar No. 24032644

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Dr.
Austin, TX 78741
  (512) 474-5073 [phone]
  (512) 474-0726 [fax]

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

  I certify that a true copy of this document was delivered on August 13, 2007 to attorney for the defendants, Dolena Westergard, 133 N. Industrial Blvd., LB 19 Dallas, TX 75207-4399, *via fax*: (214) 653-2899.

                  /s/ Scott Medlock
                  Scott Medlock