UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PRISON LEGAL NEWS, a non-profit | § | |
| Washington corporation | § | |
| Plaintiff | § | CIVIL ACTION NO. |
| v. | § | 3:07-CV-0367-P |
| | § | |
| GARY LINDSEY, individually and | § | |
| in his official capacity as the Chief Deputy, | § | |
| Office of Detentions for Dallas County, | § | |
| EDGAR McMILLAN, individually, | § | |
| UNKNOWN DALLAS COUNTY JAIL | § | |
| GUARDS, individually and in their official | § | |
| Capacities, SHERIFF LUPE VALDEZ, | § | |
| Individually, and in her official capacity as | § | |
| the Sheriff of Dallas County, and DALLAS | § | |
| COUNTY | § | |
| Defendants | § | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Scott Medlock
State Bar No. 24044783
James C. Harrington
State Bar No. 09048500
Wayne Krause
State Bar No. 24032644

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
    (512) 474-5073 [phone]
    (512) 474-0726 [fax]

ATTORNEYS FOR PLAINTIFF

# TABLE OF CONTENTS

UNDISPUTED FACTS ................................................................................................. 3

ARGUMENT ............................................................................................................... 8

1. Case Law is Unambiguous that Jail Publications Bans are Unconstitutional and Plaintiff Should Prevail as a Matter of Law .............................................................................. 8

2. Defendants' Policy Does Not Provide Due Process Protections. .................................... 10

3. Plaintiff Is Entitled to Damages for Actual Injuries and Defendants' Reckless Indifference to First and Fourteenth Amendment Rights. ............................................... 12

4. Plaintiff Is Entitled to Injunctive Relief for Defendants' Violation of Plaintiff's First and Fourteenth Amendment Rights. ................................................................................ 17

5. Plaintiff's Claim for Injunctive Relief is Not Moot as Defendants' Actions Show Policy is Capable of Repetition Yet Evading Review. ............................................................ 19

6. Plaintiff is Entitled to Declaratory Relief for Defendants' Violation of Plaintiff's First and Fourteenth Amendment Rights. ............................................................................ 23

CONCLUSION ........................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Allee v. Medrano*, 416 U.S. 802 (1974). ....................................................................... 20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). ............................................ 8

*Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959) ............................................... 17

*Bean v. Independent American Savings Association*¸ 838 F.2d 739 (5th Cir. 1988) .............. 20

*Bell v. Wolfish*, 441 U.S. 520 (1979). ............................................................................ 9

*Carey v. Piphus*, 435 U.S. 247 (1978) .......................................................................... 14

*Center for Individual Freedom v. Carmouche*, 449 F.3d 655 (5th Cir. 2006) .............. 21, 22

*City News and Novelty, Inc. v. City of Waukesha*, 531 U.S. 278 (2001) ............................ 20

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) ..................................... 19

*City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547 (7th Cir. 1986) ............... 13

*Connection Distrib. Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998) ...................................... 18

*Deerfield Medical Center v. Deerfield Beach*, 661 F.2d 328 (5th Cir. 1980) ..................... 18

*Dunn v. Blumstein*, 405 U.S. 330 (1972) ...................................................................... 22

*Elrod v. Burns*, 427 U.S. 347 (1976) ............................................................................ 18

*Federal Trade Commission v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) .......... 20

*Friends of the Earth v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167 (2000). ..... 19, 20, 21

*Jacklovich v. Simmons*, 392 F.3d 420 (10th Cir. 2004) ...................................... 9, 10, 11

*Joelner v. Village of Washington Park*, 378 F.3d 613 (7th Cir. 2004) ............................... 18

*Lewis v. Woods*, 848 F.2d 649 (5th Cir. 1988). .............................................................. 12

*Mann v. Smith*, 796 F.2d 79 (5th Cir. 1986) ..................................................... 9, 10, 15

*Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989) .......................................................... 15

*Meltzer v. Board of Public Instruction of Orange County*, 548 F.2d 559 (5th Cir. 1977). ......... 23

*Memphis Community School Dist. v. Stachura*, 477 U.S. 299 (1986) ................................. 11

*Miniken v. Buss*, 978 F.Supp. 1356 (E. Dist. Wash. 1997) .............................................. 10

*Montcalm Publishing Corp. v. Beck*, 80 F.3d 105 (4th Cir. 1996) ..................................... 10

*Nettles v. Griffith*, 883 F.Supp. 136 (E.D. Tex. 1995). .................................................. 14
*Prison Legal News v. Cook*, 238 F.3d 1145 (9th Cir. 2001) ........................................... 9
*Prison Legal News v. Lehman*, 397 F.3d 692 (9th Cir. 2005) ......................................... 9
*Procunier v. Martinez*, 416 U.S. 396 (1974) .......................................................... 10, 16
*Smith v. Wade*, 461 U.S. 30 (1983) ..................................................................... 15
*Sockwell v. Phelps*, 20 F.3d 187 (5th Cir. 1994) ................................................... 15, 16
*Standard Oil Co. v. Lopeno Gas Co.*, 240 F.2d 504 (5th Cir. 1957). ............................. 17
*Taylor v. Sterrett*, 600 F.2d 1135 (5th Cir. 1979). ................................................... 15
*Thornburgh v. Abbott*, 490 U.S. 401 (1989) ............................................................ 9
*Turner v. Sterrett*, 344 F.Supp. 411 (N.D. Tex. 1972). ............................................... 9
*United States v. Oregon State Medical Society*, 343 U.S. 326 (1952)........................... 20
*Weinstein v. Bradford*, 423 U.S. 147 (1975).......................................................... 21

## Statutes

42 U.S.C. § 1988.................................................................................... 17, 24

## Rules

Federal Rule of Civil Procedure 56 ................................................................. 3, 8

## Regulations

28 C.F.R. § 540.71(e)(2007)........................................................................ 18, 24

## TABLE OF EXHIBITS

Exhibit A, 2nd Declaration of Paul Wright……………………………………………...…1
Exhibit B, Defendant Lindsey's Response to Plaintiff's Requests for Admission……………….6
Exhibit C, Deposition of Gary Lindsey……………………………………………………13
Exhibit D, March 17, 2006 Email from McMillan to Jail Staff………………………….……25
Exhibit E, Dallas County Newspapers, Magazines and Inmate Mail Policy…………………..27
Exhibit F, 1st Affidavit of Paul Wright…………………………………………………….31
Exhibit G, Dallas Sheriff's Department Inmate Handbook…………………………....………34
Exhibit H, Billy Allen July 20, 2006 Grievance Response…………………………………….37
Exhibit I, Lakeith Amir-Sharif October 12, 2006 Grievance…………………………………39
Exhibit J, Lakeith Amir-Sharif December 7, 2006 Grievance……………………………...….41
Exhibit K, Wright Expert Report……………………………………………………......….43
Exhibit L, Affidavit of Leslie Sweet……………………………………………………….46
Exhibit M, Declaration of Alfredo Bernal…………………………………………………..51
Exhibit N, Declaration of Barbara Belen……………………………………………………54
Exhibit O, Affidavit of James Harrington…………………………………………………..57
Exhibit P, Alfredo Bernal Inmate Requests and Grievances……………….…....……………69
Exhibit Q, Alfredo Bernal Grievance Response September 6, 2007……………………...…….76

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Prison Legal News, pursuant to Federal Rule of Civil Procedure 56, and requests that this Court grant summary judgment against Defendants for their unconstitutional policies in the Dallas County Jail.

**UNDISPUTED FACTS**

Prison Legal News publishes a monthly 48-page legal information magazine *Prison Legal News* (*PLN*) dealing with the rights of incarcerated individuals. The publication provides information about court access, disciplinary hearings, prison conditions, excessive force, mail censorship, jail litigation, visitation, telephones, religious freedom, prison rape, and the death penalty. It has published continuously since 1990.[1] The publication is core protected speech, which is not objectionable on security or other grounds.[2] Prison Legal News has approximately 7,000 subscribers nationwide, including nine subscribers currently incarcerated in the Dallas County Jail and two additional subscribers who were released before this motion was filed, but suffered the same deprivation.[3]

Edgar McMillan was Chief Deputy of the Office of Detentions for Dallas County until July 2006. He wrote policies for the jail during the relevant time period. He is sued in his individual capacity for punitive and compensatory damages. Gary Lindsey is the current Chief Deputy of the Office of Detentions for Dallas County. He issues policies for the Dallas County Jail ("the jail") and oversees all operations at the jail. He is sued in his individual capacity for

---

[1] *See* Exhibit A, 2nd Declaration of Paul Wright, para. 2, Appendix p. 2.

[2] *See* Exhibit B, Defendant Lindsey's Response to Plaintiff's Requests for Admission, No. 14, Appendix p. 9; Exhibit C, Deposition of Gary Lindsey 37:4-11, Appendix p. 20; *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001). Sample copies of two recent issues of *PLN* were attached as exhibits to Plaintiff's Motion for Preliminary Injunction. Additional copies can be made available upon request.

[3] *See* Exhibit A, 2nd Declaration of Wright, para. 2, Appendix p. 2.

punitive and compensatory damages and in his official capacity for injunctive relief. Lupe Valdez is the Sheriff of Dallas County and, by law, is responsible for the operation of the jail. She is the chief policy-maker for the jail. She is sued in her individual capacity for punitive and compensatory damages, and, in her official capacity, for declaratory and injunctive relief. Dallas County is a political subdivision of the State of Texas and is sued for compensatory damages and declaratory and injunctive relief. During all relevant times Defendants were acting under color of law.

On March 17, 2006, Defendant McMillan sent an email to jail staff informing them of a new policy[4] prohibiting general population inmates from receiving periodicals, including *PLN*.[5] Valdez received this email. The March 2006 policy, drafted and implemented by McMillan and enforced by Lindsey, Valdez and Dallas County, prevented Prison Legal News from delivering its publication to its subscribers incarcerated in the jail.[6]

On February 6, 2007, Defendant Lindsey issued a written policy codifying the March 2006 email. In relevant part the policy declared: "General population inmates are not allowed magazines or newspapers." Inmates may "receive through the mail … soft back books or publications (not magazines) from publishers, publication supplier, or bookstores."[7] This was the official policy of Dallas County, and was enforced Defendants.[8]

---

[4] For the sake of clarity, the initial policy drafted by Defendant McMillan and later codified by Defendant Lindsey will be referred to as the March 2006 policy.

[5] *See* Exhibit B, Defendant Lindsey's Response to Plaintiff's Requests for Admission, No. 3, Appendix p. 7; Exhibit D, March 17, 2006 Email from McMillan to Jail Staff, Appendix p. 26.

[6] *See* Exhibit B, Defendant Lindsey's Response to Plaintiff's Requests for Admission, No. 4 and 18, Appendix p. 8 and 10.

[7] Exhibit E, Dallas County Sheriff's Department Newspapers, Magazines and Inmate Mail Policy, Appendix p. 29-30.

[8] *See* Exhibit B, Defendant Lindsey's Response to Plaintiff's Requests for Admission, No. 1, 2, and 4, Appendix p. 7-8; Exhibit C, Deposition of Lindsey 32:1-6, Appendix p. 17.

The policy, developed, enacted, and enforced by Defendants, prevented Prison Legal News from communicating with its subscribers incarcerated in the jail for a period of at least twelve months.[9]  Prison Legal News received no notice of the policy change.[10]  The jail's "Inmate Handbook," which prior to filing this action was last updated in May 2005, still provided at the time that inmates could receive "books, magazines, or newspapers," if they were sent through the mail by the publisher.[11]  Instead, issues of *PLN* and other publications were systematically censored upon receipt at the jail.

On July 20, 2006, a *PLN* subscriber, inmate Billy Allen, filed a grievance with the jail because he was not receiving *PLN*.  He received a response on September 7, 2006, that "newspapers and magazines are no longer allowed in the jail."[12]  Defendants destroyed the copy before he was provided notice of the change in policy.  They did not notify Prison Legal News that they had suppressed Mr. Allen's copy.

On October 12, 2006, Lakeith Amir-Sharif filed a grievance that he had not been receiving his issues of *PLN*: "My monthly subscriptions to *Prison Legal News* … are being rejected despite my First Amendment right."[13]  After receiving no response, Mr. Amir-Sharif filed a second grievance on December 7, 2006.[14]  Though Defendants knew of complaints concerning the March 2006 policy, they continued to enforce it.  They did not notify Prison Legal News that they had suppressed Mr. Amir-Sharif's copy.

---

[9] *See* Exhibit F, 1st Affidavit of Paul Wright, para. 6, Appendix p. 33.

[10] *See* Exhibit A, 2nd Declaration of Wright, para. 9, Appendix p. 4.

[11] Exhibit G, Dallas Sheriff's Department Inmate Handbook, Appendix p. 36.

[12] Exhibit H, Billy Allen Grievance Response, Appendix p.38.

[13] Exhibit I, Lakeith Amir-Sharif October 12, 2006 Grievance, Appendix p.40.

[14] Exhibit J, Lakeith Amir-Sharif December 7, 2006 Grievance, Appendix p.42.

Prison Legal News did not receive any notice *PLN* was not reaching its subscribers or any opportunity to contest the decisions preventing inmates from receiving *PLN*.[15]

The stated purpose of the publications policy was to "eliminate clutter" and reduce fire hazards in cells.[16] Defendants enforced the unconstitutional March 2006 policy despite the myriad of other options for reducing fire-loading material and hazards within cells.[17] There are many alternative means of eliminating clutter that do not infringe upon the First Amendment. The goal of eliminating clutter does not allow Defendants to unilaterally ignore Fourteenth Amendment due process rights.[18]

Plaintiff brought suit on February 27, 2007 because Defendants' policy violated its clearly established constitutional rights under the First and Fourteenth Amendments.

Defendants altered their unconstitutional policy on March 16, 2007, only *after* their counsel received the summons and complaint in this action.[19] Defendants filed an affidavit with the Court, stating the March 2006 policy was no longer being enforced as of May 29, 2007.[20]

The revised policy, however, contains no due process provision whatsoever, for either prisoners or publishers such as Prison Legal News.[21] The Court has already noted, "Not only

---

[15] *See* Exhibit F, 1st Affidavit of Wright, para. 4-5, Appendix p. 32; Exhibit A, 2nd Declaration of Wright, para. 9, Appendix p. 4.

[16] Exhibit E, Newspapers, Magazines and Inmate Mail Policy, Appendix p. 29.

[17] *See* Exhibit C, Deposition of Lindsey 34:16, Appendix p. 18; Deposition of Lindsey 43:12-14, Appendix p. 22; *see also* Exhibit K, Wright Expert Report, Appendix p. 44-45.

[18] *See id.*

[19] However, the revised policy ("revised policy" or "the revision") grants explicit exception only to "magazines," not to newspapers or other materials protected by the First and Fourteenth Amendments. Exhibit L, Affidavit of Sweet, Appendix p. 49-50. Moreover, the revised policy does not define what constitutes a "magazine." This Court even noted in its June 18, 2007 order that the "[revised] policy itself is less than clear" and fails to reflect the intent stated by Defendants. Order June 18, 2007, Docket Entry 23, p. 7, fn. 2.

[20] *See* Exhibit L, Affidavit of Leslie Sweet, Appendix p. 47-48.

[21] *See* Exhibit B, Defendant Lindsey's Response to Plaintiff's Requests for Admission, No. 8, Appendix p. 8.

have Defendants not proposed a remedy for its violation of Plaintiff's rights of notice and the opportunity to be heard … Defendants have not acknowledged any problem in this area."[22]

*PLN* subscriber Alfredo Bernal arrived in the Dallas County Jail on May 31, 2007. Mr. Bernal was told inmates in two-person cells – general population inmates – could not receive magazines.[23] (The March 2006 policy also prohibited general population inmates from having publications.) Mr. Bernal asked an officer if this was true, and was told the jail prohibited general population inmates from receiving publications such as *PLN*; he then filed a grievance complaining that his First Amendment rights were being violated.[24] Receiving no response, he wrote a second grievance. When the jail still did not respond, Mr. Bernal appealed the grievance. Mr. Bernal finally received a response in early September 2007 which stated he was allowed copies of *PLN*, but not other publications.[25] However, despite requesting another copy from Plaintiff, Mr. Bernal has yet to receive a single issue of *PLN* for the time he has been incarcerated in the jail.[26]

On September 7, 2007, after the alleged implementation of Defendants' revised policy, Prison Legal News received a phone call from Mr. Bernal's sister. She told Plaintiff that Mr. Bernal was being denied his issues of *PLN*.[27] Upon calling the jail, Plaintiff was informed "the jail did not allow inmates to possess magazines, because the inmates are allowed to watch

---

[22] Order of June 18, 2007, Docket Entry 23, p. 7.

[23] *See* Exhibit M, Declaration of Alfredo Bernal, para. 5, Appendix, p. 53, Exhibit P, Alfredo Bernal Inmate Requests and Grievances, Appendix p. 71, 73; Exhibit Q, Alfredo Bernal Grievance Responses, Appendix p. 77.

[24] Exhibit M, Declaration of Bernal, para. 6, Appendix p. 101; Exhibit P, Bernal Inmate Requests and Grievances, Appendix p. 73-74.

[25] Exhibit M, Declaration of Bernal, para. 6, Appendix p. 53; Exhibit Q, Bernal Grievance Responses, Appendix p. 78.

[26] Exhibit M, Declaration of Bernal, para. 7, Appendix p. 53.

[27] *See* Exhibit N, Declaration of Barbara Belen, para. 3-4 Appendix p. 55; Exhibit M, Declaration of Bernal, para. 5, Appendix p. 53.

television."  Furthermore, Plaintiff was told the newest iteration of the publications policy[28] had been in place for approximately a month, and since then inmates received "no magazines - nothing."[29]  As with the previous policies, Plaintiff received no notice that its publication is being censored.  Plaintiff has been given no opportunity to contest the decision of Defendants to censor its magazine.[30]

The publications policy, developed, enacted and enforced by Defendants, deprived Prison Legal News of its constitutional rights of free speech and expression and its due process rights, and continues to do so.

## ARGUMENT

A federal court should grant summary judgment when the movant can show there is no genuine issue of material fact and judgment should be rendered as a matter of law.[31] A fact is material only if dispute over it would affect the outcome of the suit.[32]  Prison Legal News seeks declaratory relief, damages, and a permanent injunction enjoining Defendants from continued violations of the First and Fourteenth Amendments. As Defendants do not dispute any of the material facts at issue in this case, the Court should grant summary judgment to Plaintiff for Defendants' violations of the First and Fourteenth Amendment.

1.  *Case Law is Unambiguous that Jail Publications Bans are Unconstitutional and Plaintiff Should Prevail as a Matter of Law.*

---

[28] Due to the apparent congruity between the policy being enforced as of September 2007 and the policy of March 2006, this brief assumes that this "new" policy is in fact the same March 2006 policy concerning newspapers and magazines.

[29] Exhibit N, Declaration of Belen, para. 5, Appendix p. 55.

[30] Exhibit N, Declaration of Belen, para. 6 Appendix p. 56.

[31] Federal Rule of Civil Procedure 56.

[32] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Fifth Circuit has decided jail publication bans are unconstitutional in a case remarkably similar to this one.  In *Mann v. Smith*, 796 F.2d 79 (5th Cir. 1986), an inmate challenged the Midland County Jail's ban on publications.  Midland County contended the publication ban was necessary to prevent fires and damage to the plumbing.  The Fifth Circuit concluded "the ban on newspapers and magazines must be struck down" because it represented "an 'exaggerated response' by jail officials to the legitimate need to 'preserve internal order and discipline and to maintain institutional security.'  The patently under-inclusive nature of the regulation strongly suggests that it is indeed an exaggerated response."[33]

Defendants' ban on publications appears factually identical to the unconstitutional ban at issue in *Mann*. The official rationales in *Mann* – preventing fire hazards and eliminating cell clutter – are the same as Defendants' rationales. In both cases, the policy was justified on the basis that inmates had access to television.[34]  Similar to *Mann*, the policy of Dallas County Jail represents an "exaggerated response," the constitutionality of which cannot be sustained.

Numerous other courts have also struck down jail and prison publication bans as violations of the First Amendment.[35]

---

[33] *Id*. at 82, citing *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979).

[34] It is worthy noting the highly questionable logic of this rationale given the conventional wisdom of the rehabilitative effects of reading versus the detrimental effects of television watching.  Former U.S. Supreme Court Chief Justice Warren Burger, when discussing prison conditions, noted "watching television or an occasional movie, with nothing more, is building up to an expensive accounting when these men are released—if not before.  Such crude recreation may keep men quiet for the time, but it is a quiet that is ominous for the society they will re-enter."  Address by Chief Justice Warren E. Burger, National Conference on Corrections, Dec. 7, 1971.  Cited with approval by *Turner v. Sterrett*, 344 F.Supp. 411, 420 (N.D. Tex. 1972).

[35] *See*, *e.g.*, *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Prison Legal News v. Lehman*, 397 F.3d 692 (9th Cir. 2005) (finding state prison system's policy of banning publications to reduce "clutter" unconstitutional); *Jacklovich v. Simmons*, 392 F.3d 420 (10th Cir. 2004) ("both inmates and correspondents have a qualified liberty interest in uncensored communications that are protected by the First Amendment"); *Prison Legal News v. Cook*, 238 F.3d 1145 (9th Cir. 2001) ("publishers who wish to communicate with inmates by sending requested subscriptions have a legitimate First Amendment interest in access to prisoners") (citing *Thornburgh*, 490 U.S. at 408); and, *Miniken v. Buss*, 978 F.Supp.

9

The undisputed facts of this case are virtually identical to *Mann* which found a jail ban on publications to be an "exaggerated response" to the issue of fire hazards and cell clutter. A multitude of cases supports *Mann* and unambiguously points to the unconstitutionality of Dallas County Jail's March 2006 publications policy. Defendants admit to enforcement of the March 2006 policy for a period of at least twelve months.[36] During these twelve months, Defendants censored and suppressed forty-two (42) issues of *PLN*.[37] Thus, the Court should grant summary judgment as a matter of law on Plaintiff's First Amendment claims.

2.    *Defendants' Policy Does Not Provide Due Process Protections.*

Defendants' continue to disregard Plaintiff and inmates' due process rights. Publishers, such as Prison Legal News, have a clearly established right to due process when jail authorities reject their magazine. At minimum, they are entitled to notification the publication will not be delivered and an opportunity to respond.[38]

Prison Legal News received no notice of its publication's rejection nor did Defendants provide any opportunity to respond.[39] Moreover, Defendants' revised policy contains no due

---

1356 (E. Dist. Wash. 1997) ("the blanket prohibition against receipt of a publication by any prisoner carries a heavy presumption of unconstitutionality").

[36] Exhibit B, Defendant Lindsey's Response to Plaintiff's Requests for Admission, No. 1-2, Appendix p. 7.

[37] Exhibit A, 2nd Declaration of Wright, para. 4 Appendix p. 2.

[38] *See*, *e.g.*, *Procunier v. Martinez*, 416 U.S. 396 (1974) (overruled on other grounds); *Prison Legal News v. Lehman*, 397 F.3d at 701 ("prison officials must provide minimum procedural safeguards to protect inmates' interest in receiving mail by notifying inmates of their decision not to deliver letters"); *Montcalm Publishing Corp. v. Beck*, 80 F.3d 105 (4th Cir. 1996); *Miniken*, 978 F. Supp. at 1363 ("any restriction on prisoner mail must be accompanied by procedural protections"); *Jacklovich*, 392 F.3d at 433 ("procedural safeguards must accompany any decision to withhold delivery or censor incoming prison mail").

[39] *See* Exhibit A, 2nd Declaration of Wright, para. 9, Appendix p. 4.

process provision guaranteeing publications notice and the opportunity to be heard.[40]  Prison

Legal News and other publishers have a Fourteenth Amendment right to receive such notice and

the opportunity to object when Defendants prevent their publication from reaching their

subscribers.[41]  Given the lack of notice under the March 2006 policy, and the subsequent failure

to address the constitutional violation during revision, it is obvious Defendants are deliberately

indifferent to their continued violation of Plaintiff's Fourteenth Amendment rights.

Prior to the commencement of legal action, Defendants did not hesitate to ban *Prison

Legal News* and other publications without providing individualized notice. To this day,

Defendants continue to fail to provide notice to those publications which remain subject to

censorship.[42]  Plaintiff has no way of knowing even now if *PLN* is being appropriately delivered

to its subscribers.  Defendants have continued to violate Plaintiff's constitutional rights even

though lack of notice and due process do not further any legitimate penological interest.

The U.S. Supreme Court has held that all violations of constitutional rights are due

protection, regardless of whether the right infringed was a substantive right or "a 'mere'

procedural safeguard."[43]  . Defendants' continued violation of the Fourteenth Amendment is

inexcusable, and Plaintiff's procedural rights should be protected to the same extent that any

substantive right would be.  Defendants' continued lack of notice to publishers threatens

irreparable injury by denying publications the opportunity to mitigate harms caused by

censorship.  Violations of Plaintiff's due process rights cause an independent injury.  When

Plaintiff does not receive notice *PLN* is not being delivered, it cannot communicate with its

---

[40] *See* Order of June 18, 2007, Docket Entry 23, p. 7; Exhibit L, Affidavit of Sweet, Appendix p. 49-50.

[41] *See, e.g., Prison Legal News v. Lehman*, 397 F.3d at 701; *Jacklovich*, 392 F.3d at 433.

[42] *See* Exhibit A, 2nd Declaration of Wright, para. 9, Appendix p. 4; Exhibit N, Declaration of Belen, para. 6, Appendix p. 104.

[43] *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 309 (1986).

subscribers to explain why the magazine is not being delivered to prevent injury to its business reputation.[44]   As both the March 2006 and revised policies fail to provide due process to censored publications, Plaintiff has had no opportunity to mitigate damage caused to its business reputation, or challenge the recently reinstated censorship of *PLN*.[45]

Multiple grievances by inmates and filing of this action have provided Defendants with abundant notice of both First and Fourteenth Amendment violations.   Defendants' absolute failure to address due process concerns in their policy revision indicates a blatant disregard for fundamental rights.   Even if the Court accepts Defendants' argument that injunctive relief is inappropriate because of the alleged policy change with respect to First Amendment claims, Defendants' policy still fails to address Plaintiff's Fourteenth Amendment due process claims. Defendants have never asserted that any sort of due process procedures have been or are now in place to address Plaintiff's concerns.   Thus, lacking any dispute over facts or law, the Court should find for Plaintiff as a matter of law on the issue of Fourteenth Amendment violations.

3.   *Plaintiff is Entitled to Damages for Actual Injuries Incurred by Defendants' Reckless Indifference to First and Fourteenth Amendment Rights.*

Due to Defendants' continued violation of the First and Fourteenth Amendments, Prison Legal News seeks compensatory damages, punitive damages, as permitted and appropriate, and reasonable attorney's fees and costs.   Plaintiff's fundamental rights have been infringed and "a violation of constitutional rights is never *de minimis*."[46]

---

[44] *See* 2nd Declaration of Wright, para. 10, Appendix p. 4.

[45] *See* Exhibit A, 2nd Declaration of Wright, para. 10, Appendix p. 4; Exhbit N, Declaration of Belen, para. 6, Appendix p. 104.

[46] *Lewis v. Woods,* 848 F.2d 649, 651 (5th Cir. 1988).

Defendants' policy prevented Plaintiff from accomplishing its purpose – educating incarcerated people about their civil rights.[47]  Plaintiff requests compensatory damages for violation of its civil rights, injuries to business reputation, and lost staff time.  The censorship of each issue prevented Prison Legal News from recruiting new subscribers, disseminating its political views and legal assistance, and encouraging inmates to support issues related to the rights of incarcerated persons.[48]  Readership surveys indicate that each issue of *Prison Legal News* is read by an average of eight inmates, resulting in a total lost readership much larger than the actual number of issues censored.[49]  Plaintiff is entitled to damages for these losses which occurred as a result of Defendants' enforcing their unconstitutional activities.[50]

During the time when the March 2006 policy was enforced, Plaintiff had eleven subscribers in the jail, who were denied a total of forty-two (42) issues.  As each issue is read by approximately eight (8) people, however, Plaintiff actually lost the readership of approximately 336 individuals.[51]  Prison Legal News seeks compensatory damages of $100.00 per issue for violations of First Amendment rights and $100.00 per issue for violations Fourteenth Amendment rights, for a total of $8,400.00 for violations of its civil rights.

Prison Legal News claims compensatory damages for injuries to its business reputation.  When an inmate purchases a subscription and it does not arrive, the publisher is blamed.[52]  This is especially true when the inmate receives no notice of censorship, such as in the Dallas County

---

[47] *See* Exhibit A, 2nd Declaration of Wright, para. 2, Appendix p. 2.

[48] Exhibit A, 2nd Declaration of Wright, para. 6, Appendix 3.

[49] *Id.* at para. 7.

[50] *See City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547 (7th Cir. 1986).

[51] Exhibit A, 2nd Declaration of Wright, para. 7, Appendix p. 3.

[52] Exhibit A, 2nd Declaration of Wright, para. 10, Appendix p. 4.

Jail.[53]  Had Defendants notified Prison Legal News that *PLN* was not being delivered, Plaintiff could have communicated with subscribers to minimize damage to its business reputation.[54]  The policy also prevented inmates from sharing *PLN* with potential future subscribers.  Defendants' censorship also resulted in lost future subscriptions at the jail.  Prison Legal News seeks $500.00 in compensatory damages for injuries to its business reputation and lost subscriptions.

Prison Legal News claims compensatory damages for staff time lost to addressing Defendants' unconstitutional policy. Time spent by Plaintiff's staff fighting unconstitutional censorship is time lost to supporting Prison Legal News' core mission of educating incarcerated people about their legal rights.  Lost staff time includes: Editor Paul Wright, $1,500 for sixty hours at $25 per hour; Executive Director Don Minicken, $250 for ten hours at $25.00 per hour; Associate Editor Alex Friedman, $100 for five hours at $20 per hour; and Outreach Coordinator Susan Schwartzkopf, $100 for five hours at $20.00 per hour.  Prison Legal News claims a total of $1,950 in compensatory damages for staff time lost to this matter.

Plaintiff claims a total of $10,850 in compensatory damages for violation of its civil rights, injuries to business reputation, and lost staff time.

Plaintiff is also entitled to nominal damages. Nominal damages are always appropriate when there is a violation of constitutional rights.[55]  Prison Legal News claims nominal damages of $10.00 per issue which was not delivered to an inmate, and $10.00 per issue that was censored without providing Prison Legal News notice of the censorship and an opportunity to respond. Plaintiff claims a total of $840.00 in nominal damages.

---

[53] *Id.*

[54] *Id.*

[55] *See Carey v. Piphus*, 435 U.S. 247, 266-267 (1978); *Nettles v. Griffith*, 883 F.Supp. 136, 144 (E.D. Tex. 1995).

Plaintiff claims punitive damages from the Defendant individuals for their reckless indifference to its First and Fourteenth Amendment rights because their conduct involved "callous or reckless indifference to the rights of others."[56]  Defendants' conduct, which goes directly against clearly established Fifth Circuit precedent, demonstrates a "reckless indifference" to the free speech and due process rights of Plaintiff and other publications. Defendants continued to enforce their unconstitutional policy for months, despite receiving multiple complaints from inmates.  Defendants resumed enforcement of the March 2006 policy after representing to this Court that the censorship and due process violations had ended.

Dallas County has been enjoined before by this Court for violating inmate's First Amendment rights to read magazines.[57]  This Court entered an order prohibiting Dallas County from "destroying certain reading materials … include[ing] law books, legal materials, legal documents, books, magazines and newspaper clippings."[58]  Defendants' conduct here is clearly callous and reckless because the County was obviously on notice it had a constitutional obligation to deliver publications to inmates.

Punitive damages have been awarded in the Fifth Circuit for defendants' "knowing perpetuation of an unconstitutional prison policy."[59]  Similar to *Sockwell*, Defendants in this action issued and enforced a prison policy whose unconstitutionality should have been clearly known following the Fifth Circuit's twenty-year-old decision in *Mann* and the Supreme Court's

---

[56] *Melear v. Spears*, 862 F.2d 1177, 1187 (5th Cir. 1989) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

[57] *Taylor v. Sterrett*, 344 F.Supp. 411, 422-23 (N.D. Tex. 1972), *affirmed at* 499 F.2d 367, 368 (5th Cir. 1974) (as to policies regarding inmate access to publications).  The injunction at issue in *Taylor* was eventually dissolved by the Fifth Circuit when the jail was brought into substantial compliance with this Court's order.  *See Taylor v. Sterrett*, 600 F.2d 1135 (5th Cir. 1979).

[58] *Taylor*, 344 F.Supp. at 411.

[59] *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994).

thirty-three-year-old decision in *Procunier*, and the injunction issued thirty-five years ago against Dallas County in *Taylor*. Defendants' reckless disregard for clearly established case law makes punitive damages appropriate.

Defendants enacted their unconstitutional policy despite the existence of directly on-point Fifth Circuit precedent. They ignored the findings of this Court requiring Dallas County to respect inmates' First Amendment rights. They failed to address or investigate inmate grievances, which contended the March 2006 policy was in violation of their First Amendment rights.[60] It took the filing of this litigation for Defendants to change their unilateral and unconstitutional ban on publications. Even then, their revision failed to address Fourteenth Amendment due process. Finally, despite this ongoing action, Defendants apparently have already forgotten the critical problems with the March 2006 policy and have returned to censoring *PLN*.[61] They have continued to censor protected publications, including *PLN*, despite their representations to the contrary.[62] Defendants' policy as recently as September of 2007 is directly opposed to what was presented to the Court on May 29, 2007.[63] Such blatant indifference to the real concerns in bringing this action justifies an award of punitive damages to deter the Defendant individuals' "egregious conduct in violation of constitutional rights." *Sockwell*, 20 F.3d at 192.

Prison Legal News claims punitive damages in the amount of $10,000 against each Defendant individual for reckless indifference to its civil rights.

---

[60] *See* Exhibit I, Lakeith Amir-Sharif October 12, 2006 Grievance, Appendix p. 40.

[61] *See* Exhibit N, Declaration of Belen, para. 5, Appendix p. 55; Exhibit M, Declaration of Bernal, para. 5, Appendix p. 53.

[62] *See* Exhibit N, Declaration of Belen, para. 5, Appendix p. 55; Exhibit M, Declaration of Bernal, para. 5, Appendix p. 53; Exhibit L, Affidavit of Sweet, Appendix p. 47-48.

[63] *Id.*

Finally, Plaintiff requests all reasonable and necessary fees expended with regard to this case, and interest that shall accrue, pursuant to 42 U.S.C. § 1988. Detailed support for such fees is included in the Affidavit of James C. Harrington, including time records attached thereto. Plaintiff further requests the Court award it reasonable and necessary court costs, plus interest that shall accrue, pursuant to 42 U.S.C. § 1988.[64] Plaintiff's current attorney's fees and costs total $30,714.43.

4. *Plaintiff Is Entitled to Injunctive Relief for Defendants' Violation of Plaintiff's First and Fourteenth Amendment Rights.*

Due to Defendants' past and continuing violations of the First and Fourteenth Amendments, Prison Legal News seeks an injunction permanently enjoining future constitutional violations. Typically a permanent injunction will be granted only after a trial. However, if there are no issues of material fact and all issues of law are correctly resolved, a permanent injunction is proper without a trial.[65] As Defendants do not dispute any issue of material fact in this case, injunctive relief should be granted to Plaintiff.

The standard for a permanent injunction requires "the plaintiff must show the existence of a substantial threat of irreparable harm, that outweighs any harm the relief would accord to the defendants, that there is no adequate remedy at law, and that granting the injunction will not disserve the public interest."[66]

Prison Legal News has suffered and continues to suffer irreparable injury from Defendants' enforcement of their unconstitutional publications policy, for which it has no adequate remedy at law. "The loss of First Amendment freedoms, for even minimal periods of

---

[64] *See* Exhibit O, Affidavit of James Harrington, Appendix p. 58-68.
[65] *Standard Oil Co. v. Lopeno Gas Co.*, 240 F.2d 504, 509-510 (5th Cir. 1957).

[66] *Calmes v. U.S.,* 926 F.Supp. 582, 591 (N.D. Tex. 1996) (*citing Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-507 (1959)).

time, unquestionably constitutes irreparable injury."[67]  Plaintiff lost its First Amendment rights when Defendants began enforcing their unconstitutional March 2006 policy.  Despite the alleged revision, Plaintiff's First Amendment rights have been violated on at least one occasion since and Defendants' agents have unequivocally told Plaintiff the March 2006 policy will be enforced in the future.[68]  The requested injunction is necessary to protect the constitutional rights of Plaintiff and ensure Defendants do not continue to violate the First Amendment in the future.

The continuing threat of harm to Prison Legal News is greater than any harm injunctive relief would cause the individual Defendants or Dallas County.  While Prison Legal News and other publications risk continued violations of fundamental rights, any harm to Defendants will be *de minimis*.  Defendant Lindsey conceded at deposition that alterations to Dallas County Jail operations would be minor.[69]

As this Court noted in its June 18, 2007 order, the policy utilized by the federal Bureau of Prisons, 28 C.F.R. § 540.71(e)(2007); is constitutionally sound and has been adopted by "several jurisdictions."[70] Unlike other situations where the requested injunctive relief requires extensive judicial oversight of prison operations, here the injunctive relief is simple – require Defendants to adopt a widely accepted, constitutional policy.

An issuance of a permanent injunction would not adversely affect the public interest and public policy. "It is always in the public interest to protect First Amendment liberties."[71] Plaintiff's First Amendment and due process rights are clearly established. Additionally,

---

[67] *Deerfield Medical Center v. Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1980); *citing Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality).

[68] *See* Exhibit N, Declaration of Belen, para. 3 and 5, Appendix p. 55.

[69] *See* Exhibit C, Deposition of Lindsey, 35:1-15, Appendix p. 19.

[70] Order of June 18, 2007, Docket Entry 23, p. 5.

[71] *Joelner v. Village of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998))

allowing prisoners access to educational materials and publications reduces recidivism and allows individuals to remain connected to their communities during incarceration.[72] Accordingly, the public interest would be protected, rather than adversely affected, by granting injunctive relief.

Injunctive relief is necessary to prevent further violations of Plaintiff's free speech and due process rights. The revised policy does not reduce the chance that Plaintiff's First Amendment rights will be infringed and does not address the violations of Plaintiff's Fourteenth Amendment rights at all. As protection of First and Fourteenth Amendment rights is always in the public interest, and can be accomplished with minimal disruption to the operation of the jail, Plaintiff should be granted injunctive relief due to the substantial threat of irreparable harm which outweighs any potential injury to Defendants.

5.    *Plaintiff's Claim for Injunctive Relief is Not Moot As Defendants' Actions Show Policy is Capable of Repetition Yet Evading Review.*

The U.S. Supreme Court has long held that a claim is not moot simply because a defendant alters an illegal policy in response to litigation. A party claiming mootness faces a "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start again."[73] "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"[74] This doctrine is intended to protect plaintiffs from defendants who "seek to evade sanction by predictable 'protestations of repentance and reform.'"[75] "[A]n action for injunction

---

[72] *See* Exhibit C, Deposition of Lindsey, 46:6-12, Appendix p. 23; Exhibit K, Wright Expert Report, para. 8, Appendix p. 45.

[73] *Friends of the Earth v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000).

[74] *Id.*, quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

does not become moot merely because the conduct complained of was terminated, if there is a possibility of recurrence, since otherwise the defendant[s] would be free to return to [their] old ways."[76]   An action for injunctive relief is only moot when "subsequent events make it absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur."[77]

Defendants have done little to relieve the "heavy burden" of persuasion and cannot hope to evade an injunction simply by pretending they have changed their tune.[78]   Despite multiple grievances from inmates, some of which directly referred to First Amendment violations, Defendants altered the unconstitutional March 2006 policy only after this complaint was filed with the Court.   They constructed the revision without regard for continued violations of Plaintiff's due process rights and continued to ban other protected publications such as newspapers.   Finally, of course, Dallas County has been enjoined before by this Court because of failures to deliver publications to inmates.   Defendants' revision is insufficient to satisfy its burden "that the challenged conduct cannot reasonably be expected to start again."[79]

In fact, the Dallas County Jail has resumed its censorship without notice to Plaintiff.[80]   Despite the pendency of this litigation, Defendants have "return[ed] to their old ways," by refusing to deliver Mr. Bernal's copy of *PLN* and telling him and the Plaintiff that they would

---

[75] *City News and Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 (2001), quoting *United States v. Oregon State Medical Society*, 343 U.S. 326, 333 (1952).

[76] *Federal Trade Commission v. Affordable Media, LLC*, 179 F.3d 1228, 1232 (9th Cir. 1999), quoting *Allee v. Medrano*, 416 U.S. 802, 811 (1974).

[77] *Friends of the Earth*, 528 U.S. at 189. *See also Bean v. Independent American Savings Association*, 838 F.2d 739 (5th Cir. 1988) (upholding district court's issuance of injunction preventing foreclosure on real estate, even though the party seeking foreclosure had withdrawn the foreclosure postings at the time of the appeal).

[78] *See Friends of the Earth*, 528 U.S. at 189.

[79] *Id.*

[80] *See* Exhibit N, Declaration of Belen, para. 5, Appendix p. 55; Exhibit M, Declaration of Bernal, para. 5, Appendix p. 53.

enforce the March 2006 policy in the future. Defendants' unambiguous actions destroy any claim this plea for injunctive relief is moot or that Defendants can meet the stringent standard for demonstrating mootness.[81]    Regardless of the written policy, Defendants are intent upon enforcing the unconstitutional March 2006 censorship policy. Additionally, both the March 2006 policy and the revised policy fail to address due process violations perpetuated by the Dallas County Jail. An injunction is necessary to ensure Defendants comply with the First and Fourteenth Amendments.

Defendants' actions indicate their flagrant violations of fundamental rights are "capable of repetition yet evading review."[82]    Actions are "capable of repetition yet evading review" if: "(1) [T]he challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."[83]

The challenged policy was not fully litigated on Plaintiff's Motion for Preliminary Injunction only because Defendants scrambled to avoid a temporary injunction. Defendants caused the immediate circumstance giving rise to the need for a preliminary injunction to disappear by claiming they were not longer banning *PLN*. Simply because they delivered the publication to subscribers for a few months did not reflect any real change in Defendants' general policy of censorship and lack of notice. They are again enforcing the March 2006 policy. Given Mr. Bernal's experience during the summer of 2007, it is obvious that Defendants enforce their unconstitutional policy whenever they choose.

---

[81] *See Friends of the Earth*, 528 U.S. at 189.

[82] *See Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006).

[83] *Center for Individual Freedom*, 449 F.3d at 661 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

Even if Defendants' revised policy did not interfere with Plaintiff's future First Amendment rights, the continued exclusion of other publications (such as newspapers) creates a reasonable expectation that similar actions will arise in the future. In deciding whether there is a reasonable expectation of future action "the Court does not always focus on whether a particular plaintiff is likely to incur the same injury."[84] Instead, precedent suggests that the concern is whether other individuals will be affected similarly by the unconstitutional regulation's continued existence[85].

Undoubtedly, even if *PLN* was not still being censored, other publications similar to *PLN* continue to be rejected due to the publications policy enforced by Defendants. The revision was narrowly adapted such that many publications (such as newspapers) remain subject to censorship. Those publications unfortunate enough to be classified as a "newspaper" rather than "magazine" would continue to be summarily destroyed under the revision. This arbitrary distinction virtually guarantees that Defendant will face a nearly identical action to the one at hand brought by a newspaper publisher. Further, the confusing distinction between "newspapers" and "magazines" makes it quite likely that Prison Legal News will be forced to bring this action a second time, as the publication titles itself as "News" and is produced on newsprint. The Court previously recognized that its June 18, 2007 order relied solely on the word of Defendants that censorship would not occur in the future. Recent events indicate Defendants have abused this trust and continued to violate Plaintiff's First and Fourteenth Amendment rights.[86]

---

[84] *Center for Individual Freedom*, 449 F.3d at 662.

[85] *See Dunn v. Blumstein*, 405 U.S. 330, 333, n. 2 (1972); *Center for Individual Freedom*, 449 F.3d at 662.

[86] *See* Exhibit N, Declaration of Belen, para. 5-6, Appendix p. 55-56; Exhibit M, Declaration of Bernal, para. 5, Appendix p. 53.

Defendants should not avoid an injunction on the basis they temporarily altered the offending policy. The central controversy remains unaddressed and the revision itself is both unclear and arbitrary. Despite the written revision and the word of Defendants, censorship of *PLN* and lack of due process continues to this day.

6.   *Plaintiff Is Entitled to Declaratory Relief for Defendants' Violation of Plaintiff's First and Fourteenth Amendment Rights.*

Plaintiff is entitled to declaratory relief stating the legal obligations of Defendants with respect to the First and Fourteenth Amendments. The decision to grant declaratory relief is made irrespective of conclusions regarding injunctive relief.[87]   A case for declaratory relief is embodied in a living case or controversy.[88]   A case or controversy persists in the present instance as "the challenged governmental activity…has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties."[89]

The controversy between Plaintiff and Defendants has not disappeared and hence Prison Legal News requests a declaratory judgment against Defendants. Defendants have failed to correct for the lack of due process in their publications policy and have also failed to end the censorship of *Prison Legal News* and other protected publications. Declaratory relief is requested to assess the legal obligations of Defendants with respect to Plaintiff and other publications.

## CONCLUSION

The Court should grant summary judgment when the movant can demonstrate there is no genuine issue of material fact and judgment should be rendered as a matter of law. All facts on

---

[87] *Meltzer v. Board of Public Instruction of Orange County*, 548 F.2d 559, 568 (5th Cir. 1977).

[88] *Id.* at 571.

[89] *Id.* at 572.

which Prison Legal News relies are undisputed by Defendants, and case law regarding prison publication bans and publisher's right to notice is unambiguous.

THEREFORE, Plaintiff requests the Court grant summary judgment as a matter of law. Plaintiff requests declaratory and injunctive relief prohibiting Defendants from future publication bans and requiring the creation of procedures to ensure future due process at the Dallas County Jail as embodied in the Bureau of Prisons regulations, 28 C.F.R. § 540.71(e)(2007). Plaintiff also requests punitive and compensatory damages for harm caused by the policy, as well as reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Dated: September 28, 2007.

Respectfully Submitted,


 /s/ Scott Medlock
Scott Medlock
State Bar No. 24044783
James C. Harrington
State Bar No. 09048500
Wayne Krause
State Bar No. 24032644

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Dr.
Austin, TX 78741
  (512) 474-5073 [phone]
  (512) 474-0726 [fax]

ATTORNEYS FOR PLAINTIFF


CERTIFICATE OF SERVICE

I certify that a true copy of this document was delivered on September 28, 2007 to attorney for the defendants, Dolena Westergard, 133 N. Industrial Blvd., LB 19 Dallas, TX 75207-4399, *via fax*: (214) 653-2899.

 /s/ Scott Medlock
Scott Medlock