**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| PRISON LEGAL NEWS, n/k/a HUMAN RIGHTS DEFENSE CENTER,<br><br>*Plaintiff,*<br><br>v.<br><br>GARY LINDSEY, individually and in his official capacity as the Chief Deputy, Office of Detention Services for Dallas County, SHERIFF LUPE VALDEZ, individually and in her official capacity as the Sheriff of Dallas County, and DALLAS COUNTY,<br><br>*Defendants.* | 3:07-cv-367-P<br><br>ORAL ARGUMENT REQUESTED |

**PLAINTIFF'S MOTION TO RE-OPEN THE CASE, ENFORCE THE CONSENT DECREE, AND OBTAIN AN ORDER TO SHOW CAUSE**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. PROCEDURAL HISTORY AND RELEVANT FACTS ........ 4

A. Human Rights Defense Center's Publications ........ 4

B. The Litigation ........ 5

C. The Consent Decree ........ 6

D. Defendants' Violation of the Consent Decree ........ 7

1. Defendants' 2022 Policy ........ 7

2. Defendants' 2025 Policy ........ 9

E. Defendants' Unworkable Proposals ........ 10

III. ARGUMENT ........ 11

A. It is Proper to Hold Defendants in Contempt If They Do Not Show Cause for Their Failure to Comply with the Consent Decree. ........ 11

1. Dallas County Jail and its officials are bound by the Consent Decree. ........ 12

2. The Consent Decree requires the Jail to accept HRDC's printed materials. ........ 12

3. Defendants violated the Consent Decree. ........ 13

4. Defendants' proposals do not excuse the violations. ........ 14

B. In the alternative, HRDC Requests Limited Discovery to Further Investigate Defendants' Violations of the Consent Decree. ........ 14

IV. CONCLUSION ........ 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,
228 F.3d 574 (5th Cir. 2000) ....................11

*Caliste v. Cantrell*,
2020 WL 814860 (E.D. La. Feb. 19, 2020) .................... 15

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)....................11

*Cooper v. Phillips*,
2021 WL 4429458 (M.D. La. Sept. 27, 2021) .................... 15

*Eulich v. United States,*
2006 WL 176543 (N.D. Tex. Jan. 23, 2006) .................... 14

*Hum. Rights Def. Ctr. v. Grayson Cnty.*,
4:24-cv-00828-ALM (E.D. Tex. 2024).................... 3

*Hum. Rights Def. Ctr. v. Sw. Va. Reg'l Jail Auth.*,
396 F. Supp. 3d 607 (W.D. Va. 2019) .................... 4

*Jackson v. Whitman*,
642 F. Supp. 816 (W.D. La. 1986) ....................11

*Louisiana Fish Fry Prods., Ltd. v. Corry*,
2010 WL 1544355 (M.D. Fla. Apr. 19, 2010).................... 15

*Petroleos Mexicanos v. Crawford Enters., Inc.*,
826 F.2d 392 (5th Cir. 1987) ....................10, 11, 12, 14

*Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries,*
177 F.3d 380 (5th Cir. 1999) ....................11

*Prison Legal News v. Cook*,
238 F.3d 1145 (9th Cir. 2001) .................... 4

*Republic of Argentina v. NML Cap., Ltd.*,
573 U.S. 134 (2014).................... 14

*Reynolds v. Roberts*,
207 F.3d 1288 (11th Cir. 2000) ....................11

*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367 (1992).................... 14

*United States v. Alcoa, Inc.*,
533 F.3d 278 (5th Cir. 2008) ....................11

*United States v. United Mine Workers of Am.*,
330 U.S. 258 (1947).................... 12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Williams v. Annucci*,
895 F.3d 180 (2d Cir. 2018) ........................................ 12

**Other Authorities**

Angel E. Sanchez, *In Spite of Prison*, 132 Harv. L. Rev. 1650 (2019) .......................... 5

**Rules**

Fed. R. Civ. P. 25(d) ........................................ 12

Plaintiff Human Rights Defense Center ("HRDC")[1] respectfully petitions this Court to re-open this case and enter an Order to Show Cause why Defendants[2] should not be held in contempt for their willful, repeated refusal to distribute HRDC's publications to inmates as required by the Consent Decree. *See* Dkt. 37, Consent Decree. Judge Solis's 2007 order specifically contemplates that the case will be re-opened as needed to enforce the Consent Decree. *Id.* ¶ 8; Dkt. 38, Order of Dismissal (ordering that if "reopening of the action to enforce settlement becomes necessary, it shall be reopened as though it had never been closed"). HRDC requests the Court to enforce the Consent Decree and consider appropriate remedies against Defendants.

## I. INTRODUCTION

This case is about Dallas County and its officials' intentional and repeated refusal to comply with this Court's Order. Dkt. 38. Defendants failed to distribute HRDC's publications and mailings to inmates in violation of the direct and express language of the Consent Decree.[3] Dkt. 37, Consent Decree. This motion is not about relitigating the claims in the original litigation. It is about enforcing the terms of the Consent Decree, which is the product of the parties' resolution of HRDC's original claims. *Id.* The Consent Decree is unambiguous: HRDC's mailed publications must be permitted in Dallas County Jail facilities (the "Jail"). *Id.* ¶¶ 2-5. Those

---

[1] Human Rights Defense Center and Prison Legal News are the same corporate entity. Prison Legal News was the plaintiff in this case originally and at the time of the 2007 Consent Decree. In 2009, Prison Legal News changed its name to Human Rights Defense Center and has proceeded under that name ever since. This motion is brought under the entity's current legal name: Human Rights Defense Center.

[2] HRDC has maintained the original case caption from 2007. Through Rule 25(d), Shane Sowell, in his official capacity as Chief Deputy, Office of Detention Services for Dallas County, is substituted for Gary Lindsey in that same official capacity. Fed. R. Civ. P. 25(d). By the same Rule, Sheriff Marian Brown, in her official capacity as the current Sherriff of Dallas County is substituted for Sheriff Lupe Valdez. *Id.*

[3] This Motion addresses the existing Consent Decree, but Defendants' actions and policies also violate the U.S. Constitution independently. For that reason, Plaintiff will shortly file a separate Complaint for damages and a Notice of Related Case in the Northern District of Texas.

materials include "books distributed by [HRDC]," along with "the magazine *Prison Legal News* ("*PLN*"), renewal notices for the magazine, book fliers ("catalogs"), and similar types of mail." *Id.* The Consent Decree also requires Defendants to provide a "written explanation" when it rejects HRDC materials, including "why the *content* is non-compliant with Dallas County regulations." *Id.* ¶ 5 (emphasis added). Unbeknownst to HRDC, Defendants changed their policy in March 2022. Decl. of Paul Wright ("Wright Decl."), ¶¶ 36-37. HRDC only recently discovered the change when Defendants started rejecting and returning HRDC's outreach mailings in September 2025. *Id.* ¶ 36.

HRDC became aware of Defendants' violations through a threadbare statement: "Effective March 14, 2022 BOOKS, PUBLICATIONS, AND PERIODICALS WILL NO LONGER BE ACCEPTED." Ex. A, Rejected Mail Images, at 168. Here is an example:




That statement falls well short of the process required by the Consent Decree. Dkt. 37 ¶ 5. Defendants not only violated HRDC's rights to send their physical materials to inmates but also failed to comply with the provisions of the Consent Decree that afforded HRDC a proper explanation and an opportunity to appeal censorship decisions. *Id.*; Wright Decl. ¶ 45.

Over the last few months, HRDC has tried to convince Dallas County to voluntarily comply with the Consent Decree without the need for Court intervention. Wright Decl. ¶¶ 59-64. HRDC gave written notice of the violations of the Consent Decree on September 24, 2025 via certified

mail as required by paragraph 8 of the Consent Decree. Wright Decl. ¶ 50; Ex. D, 2025.09.24 Ltr to Dallas County Jail. Defendants did not respond. Instead, Defendants ratified a *new* set of mail and literature policies on December 17, 2025. Wright Decl. ¶¶ 53-56. That new policy goes further and bans physical books from being delivered to the Jail entirely. Ex. B, 2025 Inmate Handbook at 16. Not only is this policy an unconstitutional de facto ban on printed literature, it again flouts the unambiguous terms of the Consent Decree.

HRDC continued to try and work with Defendants to reach an amicable resolution. Wright Decl. ¶¶ 59-64. HRDC sent a second letter on May 20, 2026, and met with representatives of the Jail on June 3 and 17, July 23, and August 5, 2026. *Id.* ¶¶ 59-61; Ex. E, 2026.05.26 Ltr to Dallas County Jail. Defendants offered up some possible changes, but those proposals do not properly account for HRDC's rights under the Consent Decree. *Id.* ¶¶ 61-64. HRDC understands the Jail's position is to (1) not deliver physical softcover books at all and (2) not deliver physical magazines or similar mailings except by scanning and digitally delivering those materials to inmates' tablets. That proposals is unworkable for HRDC. To the former, HRDC's softcover books are permitted mail under the Consent Decree and a core part of HRDC's mission and protected speech. Any proposal that does not deliver these materials is insufficient. To the latter, tablet access does not properly account for HRDC's rights under the Consent Decree or the U.S. Constitution. *See e.g.,* Compl. ECF No. 1, *Hum. Rights Def. Ctr. v. Grayson Cnty.*, 4:24-cv-00828-ALM (E.D. Tex. 2024) (noting Constitutional violations for limited tablet access and mail retention). Defendants' proposals also do not guarantee the due process procedures outlined in the Consent Decree.

HRDC simply seeks an order requiring Defendants to show cause why they should not be held in contempt for their willful disregard of the Consent Decree's plain terms.

## II. PROCEDURAL HISTORY AND RELEVANT FACTS

### A. Human Rights Defense Center's Publications

HRDC is a 501(c)(3) nonprofit organization that educates and advocates for incarcerated individuals in state and federal detention facilities. HRDC publishes two magazines, *PLN* and *Criminal Legal News* ("*CLN*"), which are core protected political speech and expressive conduct on matters of public concern. Wright Decl. ¶¶ 11-13; *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001); *Hum. Rights Def. Ctr. v. Sw. Va. Reg'l Jail Auth.*, 396 F. Supp. 3d 607 (W.D. Va. 2019). HRDC's publications provide readers with information about important legal issues like access to courts and counsel, disciplinary hearings, prison conditions, excessive force cases, mail censorship, visitation, access to telephones, religious freedom, and the death penalty, among other topics. Dkt. 1, Compl., ¶ 9. These materials have been published continuously since 1990 and delivered to thousands of prisoners in hundreds of penal facilities across the United States. Dkt. 35, Plaintiff's Motion for Summary Judgment, at 4. Those institutions include death row units and "supermax" prisons, including the federal Administrative Maximum Facility in Florence, Colorado—the most secure prison in the United States. Wright Decl. ¶ 7.

HRDC also publishes and distributes non-fiction books, self-help books, and reference guides which help prisoners educate and improve themselves. *Id.* ¶ 15. These books are soft-cover, glue-bound books as shown in the photo below. *Id.* ¶¶ 16-17.



For incarcerated readers, materials like HRDC's publications provide life-changing educational information to prisoners. *See, e.g.,* Angel E. Sanchez, *In Spite of Prison*, 132 Harv. L. Rev. 1650 (2019) (describing his journey to law school through self-education using physical reading materials while incarcerated).[4]

### B. The Litigation

HRDC and Dallas County Jail's prior litigation over these First and Fourteenth Amendment issues culminated in the Consent Decree. That litigation began when Defendants implemented a policy prohibiting inmates from receiving "magazines or newspapers" in March 2006 (the "2006 Policy"). Dkt. 1, Compl., ¶ 10. Before that, HRDC regularly sent copies of *PLN* to inmates in the Jail. *Id.* But under the 2006 Policy, Defendants prohibited HRDC from communicating with its subscribers and other willing recipients through its publications. *Id.* Defendants rejected and destroyed HRDC's mailed copies of *PLN* to the Jail, without notice to inmates or to HRDC. *Id.* Several subscribers filed grievances to protest. Dkt. 35, Plaintiff's Motion for Summary Judgment, at 5-6. But these grievances were denied and their copies of *PLN* continued to be rejected. *Id.* HRDC did not learn of the 2006 Policy, or the rejection of its materials, until an inmate's family member notified HRDC that inmates were not receiving the magazines at all. *Id.* at 7-8. By failing to notify HRDC of these rejections, HRDC had no opportunity to challenge the policy or appeal the rejections. Wright Decl. ¶ 24.

---

[4] Sanchez, now a licensed attorney and Ph.D. in Law candidate at Yale, described how "**barriers to self-educating in prison included** . . . **[the] rejections of my mail orders of books**. . . . A [] teacher at the facility was so frustrated with this that he . . . risked his job to sneak the textbook into the jail so that I could continue [learning] . . . . These experiences make clear that my education was not because of prison, but in spite of it. If it were up to the prison system, I would have left uneducated, angry, and more likely to commit crimes in the future." Angel E. Sanchez, *In Spite of Prison*, 132 Harv. L. Rev. 1650, 1671-72 (2019) (emphasis added).

HRDC, then proceeding as "Prison Legal News," sued Defendants because the censorship policy deprived HRDC and its subscribers of their Constitutional rights to free speech and due process. Dkt. 1, Compl., ¶¶ 23-24. Defendants infringed HRDC's Constitutional right to communicate with incarcerated individuals. *Id.* Defendants also violated HRDC's due process rights by failing to provide notice of the policy change or an opportunity to be heard when Defendants censored and destroyed HRDC's materials. *Id.* ¶¶ 15-16, 28.

HRDC sought a preliminary injunction to allow HRDC to communicate with inmates in Dallas County Jail and prevent Defendants from censoring and destroying HRDC's publications without notice or the opportunity to be heard. After that filing, Defendants revised their mail policy on March 16, 2007. Dkt. 35, Plaintiff's Motion for Summary Judgment, at 6-7. The revised policy allowed inmates to receive *PLN* and other magazines through the mail. *Id.* at 6 n.19. The parties reached a settlement agreement in December 2007 and filed the Consent Decree at issue. Dkt. 37. The Court dismissed the case on December 19, 2007, but retained jurisdiction over the Consent Decree. Dkt. 38.

**C. The Consent Decree**

The Consent Decree preserved HRDC's rights in several material ways. *First*, the Parties agreed that *PLN* and other HRDC publications "are permitted types of mail into all Dallas County correctional facilities." Dkt. 37 ¶ 2. *Second*, the Parties agreed that HRDC is an approved book distributor, such that "books distributed by [HRDC] are permitted mail at all Dallas County correctional facilities, regardless of the postal class by which the books are sent." *Id.* ¶ 3.

*Third*, the Consent Decree established an agreed procedure by which Defendants could continue to screen incoming mail for objectionable *content*, while preserving HRDC's due process rights. *Id.* ¶¶ 4-5. But that *content* screening authority was not unfettered. If the rejection is based

on *content*—rather than an incorrect or insufficient address—the written explanation must be received by HRDC "within 3 business days of the rejection … [and] clearly explain the reason for the censorship and the party to whom PLN can direct an appeal of the censorship decision." *Id.* ¶ 5. While the appeal is pending, Defendants must hold the item in question, and if the rejection is overturned, the item must be delivered to the addressee. *Id.* Non-content rejections include issues like "address error[s] or [an] insufficient address." *Id.*

Regardless of the rejection reason, Defendants must notify HRDC of "*every* mail rejection or undelivered item sent by PLN to an inmate in the jail, together with a statement or indication of the reason for rejection." *Id.* ¶ 5 (emphasis added). After the Consent Decree, HRDC regularly mailed materials to inmates in the Jail for a number of years.

### D. Defendants' Violation of the Consent Decree

#### *1. Defendants' 2022 Policy*

HRDC discovered in September 2025 that Defendants changed their mail policy in 2022. Wright Decl. ¶¶ 36-37. HRDC discovered this by sending outreach materials to various carceral facilities where HRDC had obtained consent decrees. *Id.* ¶¶ 36. Defendants rejected HRDC's mail—containing approved materials under the Consent Decree—under a supposed policy enacted on March 14, 2022 (the "2022 Policy"). *Id.* ¶¶ 36-37. This notice was threadbare. Defendants' rejection was marked by a stamp affixed to the front of the envelope which read, "RETURN TO SENDER. Effective MARCH 14, 2022, BOOKS, PUBLICATIONS, AND PERIODICALS WILL NO LONGER BE ACCEPTED," such as this:




**Ex. A, Rejected Mail Images, at 168; Wright Decl. ¶ 37.**

The notice came with no other detail, which itself violates paragraph 5 of the Consent Decree. Dkt. 37 ¶ 5. This 2022 Policy acts as a blanket ban on *all* printed literature, even though the Consent Decree prohibits Defendants from unilaterally adopting such a policy.

The 2022 Policy violates the Consent Decree (and the U.S. Constitution) in two major ways. First, Defendants improperly rejected and censored HRDC's materials in violation of paragraphs 2 and 3. Dkt. 37 ¶¶ 2-3. Between September 2025 and July 2026, Defendants rejected at least 149 mailings sent by HRDC. Ex. C, Records of Rejected Mail; Wright Decl. ¶ 57. Second, Defendants failed to provide a written explanation of the reason for the rejection in violation of paragraphs 4 and 5. Dkt. 37 ¶¶ 4-5.

After confirming that its printed literature was rejected by Defendants on an ongoing basis, HRDC informed Dallas County Judge Clay Jenkins and Dallas County Sheriff Marian Brown of Defendants' breaches of the Consent Decree on September 24, 2025. Ex. D, 2025.09.24 Ltr. to Dallas County Jail. This notice complied with paragraph 8 of the Consent Decree. Dkt. 37 ¶ 8. Defendants did not: (1) respond during the 15-day cure period provided by the Consent Decree, (2) permit HRDC's mail to be delivered in the manner prescribed by the Consent Decree, or (3) otherwise revise or revoke their violative policies to come back into compliance. Wright Decl. ¶¶ 51-52. Defendants remain in noncompliance today.

### 2. *Defendants' 2025 Policy*

After receiving notice of their non-compliance from HRDC, Defendants—with full awareness of the Consent Decree—proceeded to ratify a second set of unlawful policies through their Inmate Handbook on December 17, 2025 (the "2025 Policy"). Ex. B, 2025 Inmate Handbook, at 16. That policy imposes a de facto complete ban on printed literature. *First*, the policy bans physical books in their entirety. *Id.* ("No physical books will be accepted."). Such a ban violates the Consent Decree because HRDC "is an approved book distributor and/or vendor" and "[b]ooks distributed by PLN are permitted mail at all Dallas County correctional facilities, regardless of the postal class by which the books are sent." Dkt. 37 ¶ 3.

*Second*, the policy limits receipt of "pre-paid subscription magazines, books (paperback type), and newspapers" only to areas that inmates do not have access to the Jail's tablets. Ex. B, 2025 Inmate Handbook , at 16. But because tablets are accessible everywhere except for restricted housing and the medical unit, that leaves virtually no areas where physical materials—like HRDC's—are allowed. Wright Decl. ¶ 55. That violates paragraph 2 of the Consent Decree because "Defendants agree[d] that [HRDC] can send its properly addressed magazine, renewal notices for the magazine, book fliers ("catalogs"), and similar types of mail to inmates in all Dallas County facilities, without proof of payment, registration by an inmate of his or her subscription, or any further requirements." Dkt. 37 ¶ 2.

*Third*, the policy provides no notice for rejected mail (either to the sender or the recipient), no statement providing the reason for the rejection, and no opportunity to appeal that decision to a neutral decision-maker. The 2025 Policy thus violates paragraphs 4 and 5 of the Consent Decree. Dkt. 37 ¶¶ 4-5. When mail is rejected for content, the Consent Decree also requires Defendants to

store the material until HRDC can appeal the rejection and obtain a decision on that appeal. *Id.* Defendants have also ignored that Consent Decree provision.

The 2025 Policy violates the express language of the Consent Decree and replaces it with policies that deprive HRDC, again, of its First Amendment and Due Process rights. HRDC's motion to enforce the decree is proper, as it follows the "cure" protocol required by the Consent Decree. Dkt. 37 ¶ 8. HRDC has given Defendants every chance to voluntarily come back into compliance with the Consent Decree, but Defendants have failed to do so. This Court retained jurisdiction over the case to enforce the Consent Decree and has authority to hold Defendants in contempt. *Id.* HRDC respectfully asks the Court to issue an order requiring Defendants to show cause as to why they should not be held in contempt for violating the Consent Decree.

**E. Defendants' Unworkable Proposals**

HRDC tried to work with Defendants to reach an amicable resolution since finding out they were in violation of the Consent Decree. But Defendants' proposals are unworkable because they do not allow for delivery of HRDC's softcover books which are permitted mail under the Consent Decree. Further, scanning and uploading HRDC's magazines and outreach materials does not adequately account for HRDC's rights under the Consent Decree. The inquiry here is straightforward: whether Defendants have complied with the Consent Decree and, if not, whether they can show an "inability" to do so. *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987).

The Consent Decree does not require HRDC to jump through hoops for delivery of its materials. The Consent Decree says the exact opposite. Dkt. 37 ¶ 2 (allowing HRDC to send its mail without "any further requirements"). The Defendants' proposals fall well short of what the Consent Decree requires. The Consent Decree plainly states HRDC's "*Prison Legal News*,

renewal notices for the magazine, book fliers ("catalogs"), and similar types of mail are permitted types of mail *into* all Dallas County correctional facilities." *Id.* (emphasis added).

## III. ARGUMENT

### A. It is Proper to Hold Defendants in Contempt If They Do Not Show Cause for Their Failure to Comply with the Consent Decree.

It is proper for this Court to compel Defendants' compliance with the Consent Decree. Federal district courts have the inherent power to enforce compliance with their orders through civil contempt. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). This includes enforcing compliance with consent decrees, which are "enforceable judicial orders." *United States v. Alcoa, Inc.*, 533 F.3d 278, 286 (5th Cir. 2008). A party who believes that another party has violated a consent decree should petition the Court to issue an order to show cause "why the defendant should not be adjudged in civil contempt and sanctioned." *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000); *Jackson v. Whitman*, 642 F. Supp. 816, 817 (W.D. La. 1986).

District courts have broad discretion to enforce consent decrees and to implement remedies when parties violate consent decrees. *Alcoa,* 533 F.3d at 286. Civil contempt is appropriate when a party fails to comply with a court order that is both specific and definite. *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries,* 177 F.3d 380, 382 (5th Cir. 1999). The movant "bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Petroleos Mexicanos*, 826 F.2d at 401. The violation does not need to be willful. *Id.*; *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000). The burden then shifts to the nonmovant to show "a present *inability* to comply with the [judgment]." *Petroleos Mexicanos*, 826 F.2d at 401 (emphasis added).

Contempt may be employed to coerce the defendant to comply with the court order. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947). Where the purpose of judicial action is to coerce compliance, the court should consider the effectiveness of the sanction in compelling compliance and the magnitude of harm threatened by continued violation. *Id.* at 304.

***1. Dallas County Jail and its officials are bound by the Consent Decree.***

The Consent Decree is an Order from this Court and applicable to Dallas County Jail. *See Petroleos Mexicanos*, 826 F.2d at 401. The Parties executed the Consent Decree on October 29, 2007, and filed it with the Court on December 7, 2007. The Court entered an order of dismissal on December 19, 2007, in which the Court "retain[ed] ancillary jurisdiction over the Settlement Agreement." Dkt. 38. That Consent Decree and Order have no expiration date. This Court's Order is in effect and has been since December 19, 2007.

The Consent Decree is applicable to Dallas County Jail and its Sheriff because suits against officials in their official capacity automatically substitute the office's successor. Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party."); *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018) (noting "[i]t is settled that 'suits against officers in their official capacity ... are directed at the office itself'").

***2. The Consent Decree requires the Jail to accept HRDC's printed materials.***

HRDC's materials are "permitted types of mail [in] all Dallas County correctional facilities." Dkt. 37 ¶ 2. Defendants must treat them as such. *Id.* HRDC is allowed to send its literature and related mailings "to inmates in all Dallas County facilities[.]" *Id.* Further, Paragraph 3 recognizes HRDC as an "approved book distributor" and requires Defendants to treat books distributed by HRDC as "permitted mail at all Dallas County correctional facilities[.]" *Id.* ¶ 3. Defendants have failed to do so at least 149 times and counting. Ex. C, Records of Rejected Mail.

Finally, Defendants are required to give HRDC written notice of every rejection or undelivered item, an explanation for the rejection, and an opportunity to appeal that decision. Dkt. 37 ¶¶ 4-5.

***3. Defendants violated the Consent Decree.***

Defendants' 2022 and 2025 policies violate paragraphs 2, 3, and 5 of the Consent Decree. The 2022 Policy violates the Consent Decree by (1) rejecting HRDC's books and magazines from delivery to their intended recipients inside the Jail (2) without providing a proper explanation for the rejection or (3) an opportunity for HRDC to appeal. The 2025 Policy violates the Consent Decree by denying access to printed literature to inmates. Ex. B, 2025 Inmate Handbook , at 16. Nor does the 2025 Policy provide for notice when mail is rejected, or an appeals process that complies with the strict terms of paragraphs 4 and 5. *Id.*; Dkt. 37, ¶¶ 4-5.

Defendants censored HRDC's literature under both of these policies. Defendants rejected HRDC's mail beginning in September 2025 under the 2022 Policy. Wright Decl. ¶¶ 36-37. Defendants did so through Return-to-Sender stamps affixed to HRDC's rejected mail, which gestured to a blanket ban on printed literature. *Id.* ¶ 37. HRDC was unable to find any public record of that 2022 Policy besides these Return-to-Sender stamps.

Defendants' violations are willful because, after receiving notice from HRDC that Defendants were in breach of the Consent Decree in September 2025, Defendants nonetheless continued censoring HRDC's literature and ratified a new policy that December. Under both policies, HRDC is constrained in what printed literature it can deliver to inmates in the Dallas County jail system in violation of the Consent Decree. Defendants' actions defy an order of the Court, and a finding of civil contempt is appropriate.

#### *4. Defendants' proposals do not excuse the violations.*

Defendants cannot argue that compliance with the Consent Decree is "factually impossible" to excuse their violations. *Eulich v. United States,* 2006 WL 176543 at *3 (N.D. Tex. Jan. 23, 2006). Defendants *can* comply. They just don't *want* to. In Defendants' words: "We are at an impasse." Defendants stopped complying with their obligations under the Consent Decree altogether based on purported penological concerns. While HRDC and Defendants will debate the legitimacy of those penological concerns in a separate suit, that is not the inquiry here. The issue here is that Dallas County Jail and HRDC made promises to each other and this Court. HRDC held up their end but Defendants have not.

HRDC met with Defendants in good faith to find a mutual path forward that effectuates the promises Defendants made to both this Court and HRDC. Defendants' proposals fall short because they are unworkable. But, again, the inquiry is whether Defendants have shown an "inability to comply with the [judgment]." *Petroleos Mexicanos*, 826 F.2d at 401. They have not.

### B. In the alternative, HRDC Requests Limited Discovery to Further Investigate Defendants' Violations of the Consent Decree.

In the alternative, HRDC requests to take limited discovery to investigate Defendants' violations of the Consent Decree. Under Federal Rule of Civil Procedure 69(a)(2), courts may allow the judgment creditor to obtain discovery in aid of execution of judgment from any person. *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 139 (2014); *see Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992) (a consent decree is "an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees"). The rule governing post-judgment discovery is "quite permissive." *Republic of Argentina*, 573 U.S. at 138. HRDC need only show good cause to warrant discovery to further investigate Defendants' willful noncompliance. *Caliste*

*v. Cantrell*, 2020 WL 814860, at *5 (E.D. La. Feb. 19, 2020); *Louisiana Fish Fry Prods., Ltd. v. Corry*, 2010 WL 1544355, at *2 (M.D. Fla. Apr. 19, 2010).

Here, HRDC has good cause to pursue discovery into whether sanctions against Defendants are warranted for their violations of the Consent Decree. If the Court desires a more robust record before deciding the appropriate course of action, HRDC requests that the Court allow limited discovery to determine the scope of Defendants' violations and to assist the Court in determining the appropriate remedy. *See Caliste*, 2020 WL 814860, at *4 (granting limited discovery to investigate compliance with consent decree while reserving judgment on contempt finding); *Cooper v. Phillips*, 2021 WL 4429458, at *5 (M.D. La. Sept. 27, 2021) (same).

For example, if the Court finds that Defendants' penological concerns may present an "inability" to comply with the Consent Decree, then HRDC requests discovery into the purported penological concerns. Discovery would unearth the Jail's current treatment of any physical materials and show whether the Jail is truly unable to comply. Accordingly, HRDC requests, in the alternative, that the Court allow the following discovery into Defendants' violations:

- A deposition of Shane Sowell, Chief Deputy, Office of Detention Services for Dallas County;

- A Fed. R. Civ. P. 30(b)(6) deposition of a corporate representative of Defendant Dallas County who has knowledge of:

    - the development and implementation of Defendants' mail policies, electronic tablet policies, the March 14, 2022 Policy banning printed literature; and the December 17, 2025 Inmate Handbook;
    - the Consent Decree and its implementation in the Dallas County jail system;
    - generally, the implementation of, and compliance with, settlements, consent decrees, and court orders in the Dallas County jail system; and

- A maximum of five (5) Requests for Production, five (5) Interrogatories, and five (5) Requests for Admission per Defendant.

## IV. CONCLUSION

For the foregoing reasons, HRDC requests that this Court re-open this matter and:

1. Issue an order to show cause for Defendants' willful violation of this Court's Consent Decree;
2. Enter a contempt citation for Defendants' willful failure to comply with this Court's Consent Decree;
3. Order such sanctions as the Court deems proper, and in an amount the Court deems reasonable;
4. In the alternative, permit HRDC to take limited discovery on the nature and scope of Defendants' violations of the Consent Decree;
5. Award HRDC its attorney's fees and costs necessarily incurred herein; and
6. For such other and further relief as this Court may deem just and appropriate.

DATED: August 6, 2026

Respectfully submitted,

*/s/ Timothy S. Durst*

Timothy S. Durst
Texas Bar No. 00786924
tdurst@omm.com
Frances Mackay
Texas Bar No. 24109494
fmackay@omm.com
Donald E. Olmos (application forthcoming)
Texas Bar No. 24143264
O'MELVENY & MYERS LLP
2801 North Harwood Street, Suite 1600
Dallas, TX 75201
Telephone: (972) 360-1900
Facsimile: (972) 360-1901

Jonathan P. Picard (*Pro Hac Vice*)
Fla. Bar No. 105477
HUMAN RIGHTS DEFENSE CENTER
P.O. Box 1151
Lake Worth, FL 33460
Telephone: (561) 360-2523
Fax: (561) 828-8166
jpicard@humanrightsdefensecenter.org

Peter B. Steffensen
Texas Bar No. 24106464
SMU DEDMAN SCHOOL OF LAW
FIRST AMENDMENT CLINIC
P.O. Box 750116
Dallas, Texas 75275
Telephone: (214) 768-4077
Fax: (214) 768-1611
psteffensen@smu.edu

Thomas S. Leatherbury
Texas Bar No. 12095275
THOMAS S. LEATHERBURY LAW, PLLC
Cumberland Hill School Building
1901 N. Akard St.
Dallas, Texas 75201
Telephone: (214) 213-5004
tom@tsleatherbury.com

*ATTORNEYS FOR HUMAN RIGHTS DEFENSE CENTER*

**CERTIFICATE OF SERVICE**

I certify that on August 6, 2026 I have electronically served this Motion to Show Cause by email with a physical copy sent by certified mail to Defendants' counsel. Defendants' former counsel of record is deceased. I have been informed by Defendants' current counsel that lead litigation counsel will be Mr. Jason Schuette (jason.schuette@dallascounty.org) and that Ms. Barbara Nicholas (barbara.nicholas@dallascounty.org) should be included. Plaintiffs also served courtesy copies via email to Ms. Annissa Obasi (annissa.obasi@dallascounty.org) and Ms. Marquite Mayes (marquite.mayes@dallascounty.org).

*/s/ Donald E. Olmos*
Donald E. Olmos

**CERTIFICATE OF CONFERENCE**

I certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h). Defendants oppose the motion. A personal conference was conducted by videoconference on July 23, and August 5, 2026 between myself and counsel referenced in the Certificate of Service above. I met with Defendants' lead litigation counsel, Mr. Jason Schuette, by telephone on August 5, 2026. No agreement was reached because the parties are at an impasse. HRDC's position is that the Jail should fully comply with the Consent Decree while the Jail believes it does not need to comply based on its stated penological concerns.

*/s/ Donald E. Olmos*
Donald E. Olmos